CHARLES P. CRAVER *vs.* JOHN A. CHRISTIAN and others.

February 11, 1887.

**Master and Servant—Dangerous Machinery—Servant's Knowledge and Assumption of Risk.**—Where the machinery in a flour-mill was extensive and complicated, and certain parts of it, which the evidence tends to show were dangerous, had been covered, to plaintiff's knowledge, but from some of which such covering had been removed, and, for several days before he was injured, had been running in that condition, in an action to recover damages for injuries caused by such machinery, *held* that, upon the evidence in the case as to the amount, character, and situation of the machinery, the nature of plaintiff's employment, and his want of notice or knowledge in respect to the changes referred to, it was not so clear that, in the exercise of ordinary prudence, he must necessarily have seen or ought to have known the condition of the machinery, and the risks to which he was exposed, as to have warranted the trial court in determining, as matter of law, that he assumed such risks as necessarily incident to his employment, or was guilty of contributory negligence in the premises.

Plaintiff brought this action in the district court for Hennepin county, to recover damages for injuries received while working in defendants' flouring-mill, under the circumstances detailed in the opinion. The action was tried before *Lochren,* J., and the plaintiff had a verdict. A new trial was refused, and the defendants appealed. A former appeal in the action is reported, 34 Minn. 397.

*P. M. Babcock,* for appellants.

*Weed Munro* and *Edwin Stone,* for respondent.

VANDERBURGH, J. The principles involved in the cases of *Sherman* v. *Chicago, Mil. & St. Paul Ry. Co.,* 34 Minn. 259, (25 N. W. Rep. 593;) *Craver* v. *Christian,* 34 Minn. 397, (26 N. W. Rep. 8;) and *Barbo* v. *Bassett,* 35 Minn. 485, (29 N. W. Rep. 198;)—and which were considered by this court in the determination thereof,—will necessarily lead to an affirmance of the order refusing a new trial in this case.

It will be seen that the liability of the defendants in these cases is not rested solely upon the ground that the machinery or instrumentalities provided were not fenced or covered, but rather upon the

ground that, assuming that the evidence tended to show that the machinery used or place of employment was unsafe and dangerous to the servant, the jury might find that the master had failed in some duty which he owed the servant, so that it might be determined that the latter did not assume the risk of the danger incident to the use of the machinery.

In *Anderson* v. *Morrison*, 22 Minn. 274, it was held that "if an employer should set an adult, who had capacity to take care of himself, and who knew the *risks*, to do a dangerous work, of course the employer would not be liable for an injury occurring to the employe in doing the work; and it would be the same if the employe were a minor, but of sufficient capacity to avoid the danger." And so the rule is stated generally in *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396: Neglect to fence or cover is not of *itself* sufficient to make the master liable. He must have been guilty of some negligence in the premises, thus failing in some duty owed to the employe. "He went to work in the place pointed out by the defendants. He thus consented to the dangers attending the work, all of which were apparent; and, if he had sufficient knowledge and capacity to comprehend them, he cannot now complain that such place might, at moderate expense, have been made safer."

The question resolves itself, then, into one in respect to the negligent conduct of the master under the circumstances of each particular case. It must be conceded, therefore, if the machinery is in fact found to be dangerous, that the duties growing out of the relations of master and servant in any particular case, as respects the use of it, are not affected by the fact that similar machinery is ordinarily left unprotected by other employers. Nor is it material that the original object of covering the gearing alleged to be dangerous, and by which plaintiff was injured, was to keep out dust, if the result was to afford protection, and the plaintiff was not notified, either in fact or by the circumstances, of the removal of such protection. It is manifest that, if practicable, dangerous machinery should be covered so as to remove the risk, or, if not done, that the employe should have reasonable notice of the risks incurred by it. *Russell* v. *Minn. & St. L. Ry. Co.*, 32 Minn. 230, (20 N. W. Rep. 147.)

In *Barbo* v. *Bassett, supra,* the cogs by which the plaintiff's hand was injured had been uncovered subsequent to his employment, without his knowledge, and he had not noticed the change. It was held to be a fair question for the jury, upon the evidence in that case, whether, considering the nature of plaintiff's duties and occupation in the mill in respect to the location of the machinery in question, the change might not have escaped his observation without negligence on his part.

In *Sherman* v. *Chicago, Mil. & St. Paul Ry. Co., supra,* the evidence tended to show that the space between the main and guard rail in a railway track, usually designated as "the frog," was dangerous to employes engaged in coupling cars, etc., and that in the yard where plaintiff's intestate had been accustomed to work, and some time before he was killed, the defendant had adopted the device of inserting wooden blocks in the angle made by the rails, to prevent accidents from the danger referred to. Subsequently some of these blocks were displaced, but it was held to be for the jury whether the instances were sufficiently numerous to indicate a change of rule by the company in respect to such protection; and the charge of the court, which limited the evidence of negligence of the deceased to the condition of the particular "frog" in which his foot was caught, and his knowledge thereof, was sustained; and the defendant's request—"that if the deceased knew that some of the rails were not blocked, and did not complain, but remained in the employ of the railroad company, although he did not know, when he went in to uncouple the cars, whether that particular rail in question was blocked or not, plaintiff cannot recover"—was held rightly refused. Nor was it to be assumed, under the circumstances, as matter of law, that because the condition of the frog in question was open to view, that the deceased, in the exercise of reasonable diligence, ought to have known the danger, and hence should be deemed to have assumed the risk.

In the case at bar the evidence tended to show that the plaintiff went to work for the defendants in their flour-mill early in July, 1881; that he had charge of the "break-roll machines," so called, 22 in number, which were run by "belting," and not by "gearing." On the

same floor of the mill, and separated by a gangway 12 feet wide, were situate 28 "smooth-roll machines," in a space by themselves, and under the charge of another employe. These last machines or mills were each run in part by "gearing." From 6 to 7 o'clock each morning, except Sundays, during the absence of the other miller, the plaintiff was in charge of the entire floor. As to the smooth-rolls his principal duty seems to have been to relieve the conveyors, when choked or clogged so that the grain from above failed to reach the hopper evenly, as occasion might require. He continued in the employment of the defendants until the latter part of August, when the mill shut down, and he was notified by the foreman to return to his place when the mill started up again, which he accordingly did on the 16th or 17th of September following. During all his previous term of service the gearing or cog-wheels had been protected with tin covers sufficient to prevent accident to employes working around the mills. Unless covered, the machinery, as the evidence tended to prove, was dangerous, but, as before shown, not such as to occasion liability to the mill-owners where the employes had been advised of the risk so as to be responsible for the exercise of reasonable care in avoiding it, and there had been no negligence in that behalf on the part of the master. It further appears that, while the mill was shut down, the covers were removed from the gearing for the purpose of repairs, and that they had not all been replaced when the plaintiff returned to work, nor before he was injured; and that the plaintiff had no knowledge that they had been removed, or that any of the machines were not so protected, up to the time he was injured. How many or which of the smooth-rollers were then furnished with such covers, does not appear, and no notice was given him in the premises. The smooth-roller mills were ranged close together, or about thirty inches apart, in rows four to six feet apart, and were placed on platforms connected by planks ten inches wide for the workmen to walk on. They were driven both by belts and gearing at each end; the gearing being composed of cast-iron cog-wheels, seven to ten inches in diameter, running into each other, and moving very swiftly.

In the morning of the fifth or sixth day after plaintiff's return to work, while left alone in charge of that floor of the mill, he was noti-

fied by the "bolter," who was engaged in another part of the mill, that some of the conveyors were clogged or choked, and immediately proceeded to ascertain the location of the difficulty, and passed among the smooth-roll machines till he came to No. 10, when, on lifting the cover of the hopper, and discovering that the grain was not moving, he struck one side of it with a mallet, standing on the platform or plank, and then, turning to strike the other side of the hopper, he made a misstep or slip from the plank, and his hand was caught in the gearing on one end of the machine, which proved not to be covered, and was injured as alleged. There was one smooth roller between No. 10 and the break-rolls, among which plaintiff ordinarily worked, and which were not raised on platforms. In certain positions the machine No. 10 in question could be observed from that part of the mill, and others not, and in some positions the uncovered wheels were in plain sight, but in others were obscured by other machines or spouts or elevators.

We are quite clear that, upon the facts as shown by the evidence in plaintiff's behalf, the question whether he did in fact observe the exposed condition of the particular machine in question, or, in the exercise of reasonable care and diligence, ought to have known it, so that he should be held to have assumed the risk, was for the jury. Here are many things to be considered, and prominent among them is the fact that, when plantiff returned to work, he understood the rule to be that the gearing of all the machines was covered, and he was never notified of any change. And in respect to No. 10, which was one out of nearly 30 machines of the same kind, part of which were covered in that part of the mill, and one of 50 to be looked after as occasion might require, it is to be remembered that there were many matters requiring his attention, a great deal of machinery in the mill, and a considerable connected with each machine. He had charge of the grinding, and it was not his duty to look after the repairs, or to keep the machinery in order. Leaving out Sunday and the day he commenced, he had only been in charge three or four mornings. And the character of his duties might reasonably be such as to distract his attention from the condition of the gearing on any particular machine, particularly if he was re-

quired to act promptly to prevent the conveyors from becoming "choked up." The evidence of plaintiff's negligence, therefore, in not observing and avoiding the danger, is certainly not conclusive. The determination of the question depended on numerous facts and circumstances, which are to be considered and weighed together in their relation to the issues involved in the case and to each other. In such cases the general rule is that the questions of fact must be submitted to the jury. *Massoth* v. *Delaware, etc., Canal Co.*, 64 N. Y. 524; *Railroad Co.* v. *Stout*, 17 Wall, 657, 664, 665, and cases.

Order affirmed.