LYDIA A. WILSON, Administratrix, *vs.* WINONA & ST. PETER RAILROAD COMPANY.

## July 29, 1887.

**Master and Servant—Risks of Employment—Railroad Employes.**— Where the foreman or yard-master, who had charge of the switching of cars and the making up of trains in the yard of a railroad company, was familiar with the situation of the tracks in the yard, and knew that a certain "frog" was not properly blocked or filled, and was unsafe and dangerous to persons engaged in switching cars, *held,* that he took upon himself the risk of its condition as incident to his employment.

**Same—Promise to Repair Defect.**—And where a section foreman to whom such yard-master applied to improve the track at that point, so as to lessen the risk, notified him that he could not do it without orders from his superior, but upon a subsequent application promised conditionally "that he would do it if he got time some Saturday afternoon," *held* insufficient to bind the company, and relieve him from the risk, and that there was no reasonable connection between such indefinite and contingent promise and his continuance in the business.

Appeal by defendant from an order of the district court for Blue Earth county, *Severance,* J., presiding, granting a new trial, the action having been dismissed by the court when plaintiff rested her case.

*Wilson & Bowers,* for appellant.

*Daniel Buck* and *Pfau & Freeman*, for respondent.

VANDERBURGH, J.[1]    The plaintiff, widow of James Wilson, deceased, and administratrix of his estate, brings this action to recover damages for injuries resulting in his death, and alleged to have been caused by the negligence of the defendant.   In the yard of the company at Mankato, it is alleged that a certain frog connecting the main track with a switch track was left in an unsafe and unprotected condition, and that the road-bed was improperly constructed at that point, in that an open space was left under the rail, so that the deceased, while engaged in the business of the company, accidentally caught his foot in or under the frog, and was run over and killed by the cars.   This yard is connected with the main line of the company by a spur track about three miles long, and it appears that the deceased was conductor on this short line, and had the management of the business at the yard, including the switching and making up of trains.   He had been so engaged for about three years, and was familiar with the character and situation of the tracks in the yard, including the frog and track in question.

The evidence shows that the track at this point was constructed in the same manner, and left in the same condition, as at other "frogs" in the yard.   It was put in and constructed in September, 1880, and the accident occurred on the 22nd of June, 1881; and it appears that the deceased knew the risks and dangers connected with the use of the track at this point to persons engaged in switching while coupling and uncoupling cars.   The deceased, at the time he was injured, was attempting to uncouple cars while in motion.   He was at the same time giving directions or signals to the engineer, who, with the brakeman then stationed on the cars sought to be separated, was subject to his control, and while he was so occupied and walking between the rails the accident occurred.   It appears, we think, that the cars could have been safely uncoupled by causing the brakeman to bring the rear cars to a stop, and thus save the risk.

1. Conceding that the questions of the negligence of the company in constructing the track, and of the contributory negligence of the

[1] Berry, J., because of illness, took no part in this case.

deceased in attempting to uncouple cars while in motion, and occupied in giving directions to his subordinates, were for the jury, still we think there is no doubt that it must be held that he took upon himself the risks incident to the situation of the track, upon the undisputed facts of the case, unless it is made to appear that he was relieved therefrom by the acts or promises of the company. *Anderson* v. *Morrison*, 22 Minn. 274; *Hughes* v. *Winona & St. Peter R. Co.*, 27 Minn. 137, (6 N. W. Rep. 553;) *Craver* v. *Christian*, 36 Minn. 413, (31 N. W. Rep. 457;) *Sherman* v. *Chicago, Mil. & St. Paul Ry. Co.*, 34 Minn. 259, (25 N. W. Rep. 593;) *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396.

2. It is, however, claimed that, before the accident, he notified the section foreman, who had charge of the repairs of the track upon that part of the road, of the defect in the track or road-bed at this particular place, and that the latter promised to remedy it, and that, in continuing in defendant's employ thereafter, he must be deemed to have relied upon the promise, and to be relieved of any responsibility arising from such risks. The determination of this question must rest entirely upon the construction to be given to the evidence of the witness Madden, the section foreman referred to, who was the only witness who testified on the subject. It appears from his evidence that he was subordinate to the road-master, and subject to the orders of the latter, and that his regular and ordinary work was to see that the track was kept in repair or "good shape, and safe for trains to pass over." He had nothing to do with new work or changes in the construction of work already completed, except as ordered by his superior. The frog and side track were constructed by him under the orders of the road-master, leaving a space of from one to two inches under the rail for the water to escape. No changes were made in it until the accident happened. The work was done in the usual way, and he received no instructions to modify it. The evidence shows that, if the earth had washed out, it would have been his duty to have restored it to its normal condition by repairs. It is not shown, however, that it was within the scope of his duty to fill or "plug" the space in question, as the deceased desired, without orders, nor was his promise in itself sufficient to bind the company. Mad-

·den was not subject to the orders of the deceased. The first time the latter spoke to him about it was more than a month before the accident, when Madden's reply was: "I told him I had no orders." "He spoke to me to plug it. I told him I had no orders to fill it, and I could not do it without orders." And about two weeks before the injury, he says deceased again addressed him on the subject. "He said that was where he done all his switching. It was not very nice. It was not very safe, and he would like to have the rails filled in be-·tween." "I told him that if I got time I would fix it some Saturday in the afternoon. This is the answer I made him." There is no other ·evidence on the subject. We think it presented no question for the jury. The deceased had had long experience in the railroad service in various capacities. He was clearly aware of the dangerous nature of this frog, to those engaged in switching. The promise was made by a subordinate subject to the orders of a superior, as he was distinctly informed, and indefinite and contingent in its character. He ·was not warranted in relying upon it, particularly as he had control ·of the movements of the cars, and by the aid of the brakeman could have accomplished the desired result without risk. *Marquette, etc., R. Co.* v. *Spear*, 44 Mich. 169, (6 N. W. Rep. 202.) We fail to see any reasonable connection between the promise of Madden and Wilson's continuance in the business. *Sweeney* v. *Berlin, etc., Co.*, 101 N. Y. 520, 525, (5 N. E. Rep. 358.)

As there is no conflict in the evidence upon any material point in the case, and its interpretation is not doubtful, a dismissal in the nature of a nonsuit was proper.

Order reversed.