## Chicago & Great Western Railroad Company

### v.

### Richard Travis, Administrator.

*Master and Servant—Negligence of Master—Unsafe Engine—Death of Servant—Loss to Next of Kin—Assumption of Risk.*

1. All employes take upon themselves the ordinary risks incident to a given employment. If an employe knows of a defect or danger, and yet continues to make use of the defective appliance, and to incur the danger, he is regarded as having assumed the risk.

2. If the employe continues to work because of a promise by the employer to repair the defect, there is then no such presumption of an assumption of the risk.

3. In an action brought to recover the pecuniary loss to the next of kin through the death of an employe, the same being alleged to have taken place through the negligence of the employer, it is proper to admit evidence as to the habits and character of the deceased, so far as it affected the pecuniary relations of the next of kin with him and the support, if any, they were receiving, or were likely to receive from, him or were giving to him.

[Opinion filed June 2, 1892.]

Appeal from the Circuit Court of Cook County; the Hon. Richard S. Tuthill, Judge, presiding.·

Messrs. H. S. Boutell and K. K. Knapp, for appellant.

Messrs. Case, Hogan & Case, and Gibbons, Kavanagh & O'Donnell, for appellee.

Waterman, P. J. This was an action to recover the pecuniary loss sustained by the next of kin from the death of William E. Travis, who was killed while working as a switchman for appellant. The declaration charges that appellant furnished for deceased to work upon an unsuitable and unsafe engine, in this, that the hand rail of the engine was broken off.

An allegation of a duty to furnish a safe and secure engine being made, this is followed by a statement that the hand-rail was broken off, and that the defendant in attempting to grasp the same, missed his grasp and fell under the engine, thereby being killed. This is in effect an allegation that the deceased did not know that the hand-rail was gone, because he could not have attempted to grasp it if he was aware that it was broken off. The evidence is clear that the deceased knew that the hand-rail was broken off; indeed, he was present when it was broken, and had on the morning of the accident conversed with a fellow-workman about its being off. The evidence therefore fails to sustain the declaration.

The deceased by continuing to work upon an engine which he knew was defective and unsafe, thereby waived any claim which he might otherwise have, to recover for any injury caused by such defective construction. All employes take upon themselves the ordinary risks incident to such employment. If the employe knows of a defect or danger, and yet continues to make use of the defective appliance, and to incur the danger, he is regarded as having assumed the risk. Missouri Furnace Co. v. Abend, 107 Ill. 44–50; Indianapolis, Bloomington & W. R. R. Co. v. Flanigan, 77 Ill. 365; Pennsylvania Co. v. Lynch, 90 Ill. 333; Columbus, Chicago & I. C. Ry. Co. v. Troesch, 68 Ill. 545.

If the employe continues to work because of a promise by the employer to repair the defect, there is then no such presumption of an assumption of the risk. In the case at bar there was no promise to remedy the defect.

The testimony upon this subject was as follows: Robert Miller, a witness for the plaintiff, testified: "He spoke to me about the hand-railing being off, and I said to him: 'I suppose the hand-railing will be fixed when she comes out again;' but I says, 'it ain't fixed.' He said something like that, something similar, that I had no business taking the engine out without the hand-rail on. He said as long as I had charge of the engine, why didn't I see that the hand-railing was on, and I said, 'If you don't want to work

with her, we will put her in the house,' and he did not say anything more, only, 'I can work where you can,' or something like that. That 'If you can work with her off, I can.'"

Question: "What did you tell him about having it repaired?"

"I said, when we go up for dinner I will see Mr. Quimby, and I will see if we can not have a board or something put on this engine before we take her out this noon."

Even if it appeared that Mr. Miller was a person upon whose promise to repair the deceased had a right to rely, which it does not, the promise was not to repair or replace the broken rail, but to see if "they could not have a board or something put on the engine."

This was not such a promise as did away with the assumption of the risk indicated, not only by the conduct of the deceased, but by his words, "I can work where you can." Wilson v. Winona & St. Peter Ry. Co., 37 Minn. 326; Ehmeke v. Porter, 45 Minn. 338.

We think that evidence as to the habits and character of the deceased, so far as they affected the pecuniary relations of the next of kin with him and the support, if any, they were receiving, or were likely to receive from him, or were giving to him, should have been received.

In I. C. R. R. Co. v. Weldon, 52 Ill. 290, there is an intimation that the jury might consider the moral and intellectual training which the minor children could have received from the deceased. In I. C. R. R. Co. v. Baches, 55 Ill. 379, the court said, the fair and no doubt controlling element in fixing the pecuniary loss is the support which the widow and minor would have been likely to receive.

While it is true that the minor children have a right to support from the father, yet as to the kind of support he will give, and when the children are of a certain age, whether he will keep them working in his own service, or appropriate to himself their earnings, depends upon his discretion and judgment. So, too, the value of the hope they may have of ultimately succeeding to his possessions, must depend upon his habits as well as his intelligence.

The action is for the pecuniary loss sustained; this may be greater in the case of a sober, industrious man, who devoted his earnings to the support of his family, than in the case of a father who, utterly neglecting his children, spent his wages in drunken dissipation. Nashville & Chattanooga Ry. Co. v. Prince, 2 Heiskell (Tenn.), 580–587.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*