CARRIE KELLEY, Administratrix, *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

September 6, 1886.

**Master and Servant—Risks of Employment—Negligence of Fellow-Servants.**—The plaintiff was a yard brakeman, whose business and employment it was, among other things, to handle disabled cars which had been withdrawn from ordinary service, and removed to what was known as the repair track. *Held,* upon the facts of the case, that he must be taken to have assumed the risks of handling such cars arising from their disabled condition, as also the risk of the negligence of his fellow-servants in handling the same.

Upon the trial of this action in the district court for Hennepin county, before *Young,* J., and a jury, the plaintiff having rested her case, a motion for a dismissal was made and granted. Plaintiff appeals from the judgment.

*Gilfillan, Belden & Willard,* for appellant.

*J. D. Howe,* for respondent.

BERRY, J. One of defendant's flat cars, loaded with timber, having been inspected and found in bad order, was removed to a track in defendant's yard known as the repair track, being that upon which cars in bad order were customarily placed for the purpose of repair, and it was thus withdrawn (*Fraker* v. *St. Paul, M. & M. Ry. Co.,* 32 Minn. 54, 19 N. W. Rep. 349,) from actual service in defendant's ordinary business. A card marked "Bad Order" was affixed to it by the inspector, but it does not appear that it was on it when it reached the repair track. On the contrary, the evidence tends to show that it was not. It became necessary to remove it from the repair track, in order to take out other cars whose repairs had been completed; and the plaintiff's intestate, a brakeman, was one of the crew employed in the yard in handling cars upon the repair track generally, and handling this particular one in this instance for the purpose mentioned. The car was accordingly removed so as to let the other cars out, and then kicked back at a speed of four to six miles an hour, when the plaintiff's intestate, going and standing upon the track in front of it,

attempted to mount it by stepping upon the brake-beam, and seizing the brake-staff so as to raise himself up. The brake-staff gave way; he fell, and the car ran over and killed him. The evidence tends to show that the brake-staff had been nearly, if not quite, broken off before he took hold of it,—probably by the pressure of the timber against it. There was also evidence of a slight flaw in the staff at the place where it broke, but to this we attach no importance. There was also evidence tending to show that, on account of the manner in which the timber was loaded upon the car, there was no practicable way of mounting it except the way in which he attempted to do so. For what purpose he desired to mount the car does not appear, nor that there was any necessity for mounting it at all.

There is nothing whatever indicating that he had any information or knowledge as to what the particular defects or disrepair of the car consisted of, or any knowledge or information on the subject except such as was inferable from the fact that the "Bad Order" card was affixed to it, (if it in fact was,) and that it was on the track appropriated by the usage of the yard (where he had been at work for several months) to cars in bad order, which had been laid aside for repairs, and thus withdrawn from ordinary service, and designated as for some reason unsuitable therefor. The foreman of his crew, under whose direction he worked, testifies that there was no card on the car when it came to the repair track, so that *he* (who had the plaintiff's intestate in charge) could not, so far as the testimony shows, have acted upon any other information except such as was conveyed by the fact that the car was put upon the repair track, or, in the phrase of counsel, "in the hospital." These matters as to the knowledge and information of plaintiff's intestate and his foreman are alluded to with reference to the claim that it was the custom of the company to note in pencil upon the "Bad Order" card the particular defect of the car; that this was done for the benefit of employes who were to handle the car; and that, in this instance, the defect noted on the card was only as to one or more of the car-wheels. However these things may be, it is not, in our judgment, important in the case; for, assuming that the "Bad Order" card was on the car when it came to the repair track, there is nothing to show that the plaintiff's intestate saw it, or,

if he did, nothing to show that he read the pencil memorandum upon it. In fact, the evidence, so far as there is any, goes to show that the card was not on the car when it reached the repair track, and the foreman certainly did not read it.

The aspect of the case is, then, this: The plaintiff's intestate is notified *generally* that the car is in bad order, so that it has been necessary to withdraw it from ordinary service and lay it up for repairs. When he comes to handle it, he does so knowing that, for some reasons not disclosed to him, it is not suitable for use in the ordinary way. Not knowing what, in particular, those reasons are, if he handles the car at all, he handles it as a car which is unsuitable for use, and at his own risk, not only for its defects,—at least, for such as are apparent to or would fairly be suggested by ordinarily diligent and careful observation, like those of the brake on this car,—but also at the risk of the negligence of his fellow-servants in handling the same. We discover nothing in the testimony to take the case at bar out of the full application of this proposition. The plaintiff's intestate must be taken to have assumed the risk of handling this car as one in bad order, which it therefore might be dangerous to handle in the ordinary way, and as to which, in the absence of any definite information as to the respect in which it was defective, the burden of ascertaining the defect and source of danger was cast upon and assumed by him. As he took this risk and burden upon himself, he cannot hold the defendant responsible for it. This is the theory upon which *Fraker* v. *St. Paul, M. & M. Ry. Co.*, 32 Minn. 54, (19 N. W. Rep. 349,) necessarily proceeds. It can stand upon no other. See, also, *Watson* v. *H. & T. C. Ry. Co.*, 58 Tex. 434; *Flanagan* v. *Chicago & N. W. Ry. Co.*, 45 Wis. 98; S. C. 50 Wis. 462, (7 N. W. Rep. 337;) *Chicago & N. W. R. Co.* v. *Ward*, 61 Ill. 130; *McCosker* v. *Long Island R. Co.*, 84 N. Y. 77; Whart. Neg. § 214; Thomp. Neg. 1009.

Upon these grounds we are of opinion that the action was properly dismissed. If we were in doubt as to this, we think the testimony tends very strongly (to say the least) to make out a case of clear contributory negligence on the part of the plaintiff's intestate in standing upon the track in front of the moving car, and attempting to

mount it as he did. We are aware that this is a very common practice, but we are much inclined to look upon it as did Mr. Justice Miller in *Cunningham* v. *Chicago, M. & St. P. Ry. Co.*, 17 Fed. Rep. 882.

Judgment affirmed.