M. A. NUGENT v. THE CUDAHY PACKING COMPANY, Appellant.

**Master and servant:** NEGLIGENCE OF MASTER: EVIDENCE.  Where
1  plaintiff, engaged in repairing in part defendant's building, was injured in following the negligent instruction of defendant's superintendent to lower the same onto a defective brick pier constructed by other workmen, the defendant was liable for the injury in the absence of contributory negligence or assumption of risk.  Evidence held to show negligence on the part of the superintendent in directing the work.

**Negligence:** INSTRUCTIONS.  Where an employer was liable for an
2  injury to a workman resulting from failure to provide a proper support onto which plaintiff was lowering a building, reference in the court's instructions to a failure to provide a safe place to work, which was explanatory of defendant's duty, was not misleading.

**Assumption of risk.** A workman, under the direction of the owner of a building, engaged in lowering the same onto supports constructed by others, does not assume the risk incident to the defective condition of the supports of which the owner should have known.

**Contributory negligence.** A carpenter is not presumed to have a knowledge of the sufficiency of a brick pier to support a building onto which he is lowering the same, and is not guilty of contributory negligence in performing the work under the direction of the superintendent of the owner of the building, who assumes to know and asserts its sufficiency.

**Expert physician:** PRIVILEGE: WAIVER. The fact that a physician, called by defendant to examine plaintiff immediately after his injury, testified on plaintiff's preliminary examination as to his competency under Code, section 4608, that he found plaintiff in an unconscious condition, substantially as he had stated in defendant's prior examination, did not amount to a waiver of plaintiff's right to object that the witness was within the privilege of the statute, as the preliminary examination disclosed no new facts and the same was not affirmative proof of any material fact for plaintiff.

*Appeal from Woodbury District Court.*— Hon. Wm. Hutchinson, Judge.

Thursday, February 9, 1905.

Action to recover damages for personal injuries received by plaintiff while in defendant's employ. Verdict and judgment for plaintiff in the sum of $1,999 and costs. Defendant appeals.— *Affirmed.*

*M. L. Sears,* for appellant.

*Hubbard & Burgess* and *F. E. Gill,* for appellee.

McClain, J.— At the time of receiving the injury complained of, plaintiff was in defendant's employ as a carpenter, and was in charge of workmen engaged in the general business of repairing an old building. The entire work was being done under the supervision of one Casey,

who was defendant's general superintendent for the work. The particular work being done at the time of the accident by plaintiff and the men under his charge was that of letting the weight of the upper floors down upon a post resting on a new brick pier which had been constructed by other workmen to support such post and the weight of the floors resting upon it. During the construction of the pier the floors had been raised and held up by means of jack-screws. The pier, constructed of brick and cement, had been completed on Saturday; and, on Monday following, plaintiff went with his men for the purpose of letting the weight of the building down upon the pier. Water had accumulated around the pier, and plaintiff, being apprehensive that the cement was not sufficiently set, tried some of it with his fingers, and, finding it still soft, consulted Casey as to what he should do; expressing a fear that the pier was not solid enough to support the weight which was to be put upon it. Casey expressed an opinion that the cement in the interior of the pier was sufficiently set, and directed plaintiff to proceed with the work. Thereupon the jack-screws supporting the weight of the floors above were simultaneously loosened, so that the weight was thrown on the supporting post resting on the pier. At this time there was a " chuck," or creaking noise, and immediately afterward plaintiff was struck by one of the pieces of the bridging; that is, one of the short cross-pieces (a stick two by four inches in size and eighteen inches long) placed between the joists to support the flooring. The injuries complained of resulted from this accident.

The negligence alleged was that of Casey, the superintendent, in directing plaintiff and those under his charge to remove the jackscrews supporting the floors above, and thereby causing the timbers in the floors to settle and become dangerous and unsafe, and also the negligence of defendant in failing to furnish plaintiff a reasonably safe place to work, in that the place for performance of plaintiff's work was made dangerous and unsafe by the order of the super-

intendent. The principal contentions for appellant are that, as plaintiff was engaged in the work of repairing, there was no obligation on the part of defendant to furnish him a safe place to .work; that plaintiff assumed the risk incident to the work being done; and that he was guilty of contributory negligence. With reference to each of these principal contentions, complaint is made as to the instructions of the court, and failure of the court to direct a verdict for defendant on motion, or to set aside the verdict as without support in the evidence. It will not be necessary to set out the particular instructions or rulings complained of, for the errors urged by appellant relate rather to the theory on which the case was tried, than to specific errors committed, and we can satisfactorily dispose of the case by pursuing the method of treatment adopted by counsel for appellant in his argument.

I. It is conceded that the pier was not constructed under plaintiff's direction, but by workmen composing a separate force, and engaged in a different department of the work, and that if the fall of the bridging was due to the giving way of the pier, and there was negligence on the part of defendant's superintendent in directing plaintiff to let down the weight upon it, then, omitting any question for the present as to the assumption of risk or contributory negligence, defendant was liable for the injury to plaintiff. It is argued that the evidence shows the fall of the piece of bridging to have been due to the lowering of the floors above by letting down the jackscrews, and not by the giving way of the pier. But the evidence clearly tended to show that it was not until the jackscrews had been completely let down, and some of them removed, so that the weight rested entirely on the pier, that there was a sudden noise, indicating that it was giving way, and that the fall of the piece of bridging resulted from the settling of the post, due to this giving way of the pier. It was for the jury to say what was the cause of the falling

1. NEGLIGENCE
  OF MASTER:
  evidence.

of this piece of bridging, and whether it was the proximate result of the giving way of the pier, due to the negligent order of Casey to let the weight down upon it before the cement had sufficiently hardened to support the weight. There was evidence tending to show that, as Casey should have known, the cement in this pier would not become sufficiently fixed in two days to justify the throwing of the weight of the floors upon it; that it would continue to harden for a long time; and that it would not become strong enough to support such a weight in less than from five to ten days. Therefore, without regard to any question of the duty of defendant to furnish plaintiff a safe place to work, there was a direct showing of negligence on the part of Casey, as defendant's superintendent, in directing an act to be done which proximately caused the accident of which plaintiff complains; and it was substantially on this theory that the case was submitted to the jury.

It is true that the court, in an instruction, refers to the duty of defendant to provide its employés with a reasonably safe place to work; but that language is used as explaining Casey's duty in regard to the sufficiency of the pier, and the jury could not have been misled in this respect. Certainly, if the place where plaintiff was properly standing in the discharge of his duty was rendered unsafe by negligently allowing the weight of the floors above to come upon this pier, which was not sufficiently strong to support such weight, then defendant was liable, in the absence of any assumption of risk or contributory negligence on plaintiff's part; and it is quite immaterial whether this liability was described as failure to provide a sufficient support for the weight, or as failure to supply a reasonably safe place for plaintiff to work.

2. NEGLIGENCE: instructions.

II.   Counsel for appellant invokes the rule that a workman engaged in work inherently hazardous assumes the risk, and cannot recover for injury resulting from the very defect which he is employed to repair, and relies on the case of

*Wahlquist v. Maple Grove Coal & Mining Co.,* 116 Iowa, 720, and cases therein cited. But it was not

**3. Assumption of risk.** the danger of the falling of the piece of bridging that plaintiff was engaged in obviating, and it does not appear from the evidence that the piece of bridging would have fallen, had not the weight of the floors above been thrown on the pier before it was sufficiently strong to support such weight; and, as has been indicated, plaintiff had no responsibility with reference to the pier. He may have assumed the risk incident to raising the floors on jackscrews and letting them down again until their weight should be supported by the pier; but there is nothing to charge him with the assumption of risk as to its sufficiency, or any danger accompanying its giving way. As above stated, the evidence tends to show that it was the giving way of the pier, and not the lowering of the floors by letting down the jackscrews, that caused the piece of bridging to fall.

III. The act of the plaintiff in proceeding with the work of letting down the weight of the floors above on the pier, with knowledge that the cement was still soft, is relied upon as constituting contributory negligence on

**4. Contributory negligence.** plaintiff's part. But plaintiff was a carpenter, only, and not presumed to have knowledge as to the sufficiency of the pier, depending upon how soon the cement would become sufficiently strong to support the weight thrown upon it. Casey assumed to know that the cement in the interior of the pier was sufficiently set, so that it would support this weight. Plaintiff was clearly justified in relying on Casey's judgment in this matter, and was not guilty of contributory negligence in proceeding with the work after the assurance of Casey that it would be safe to do so. In this connection a further argument of counsel for appellant may be noticed. He insists that plaintiff had reason to know that the bridging was loose, and in a condition threatening danger to him, before the accident happened, and that he was guilty of contributory negligence, at any rate, as to any

risk incident to the condition of the bridging.   But as to this matter the testimony is in conflict, and it was for the jury to say whether there was a dangerous condition, known to plaintiff, of which he should have been aware, which contributed to the accident.   We cannot say, as a matter of law, under the evidence, that the accident was due to a danger which plaintiff knew or should have known to exist.

IV.   One ruling on the admission of evidence remains to be noticed.   A physician who visited plaintiff immediately after the accident was put upon the stand by defendant, and

5. EXPERT PHY-
SICIAN: priv-
ilege; waiver.

testified that he was called by the defendant to examine the plaintiff when he was hurt, and that he found him lying on a table, seemingly unconscious.   Counsel for plaintiff then asked permission to interrogate the witness for the purpose of laying a foundation on which to object to his giving testimony as to the examination which he made of the plaintiff.   In the course of preliminary questions with reference to his employment by defendant, the witness was allowed, over defendant's objection, to say that, during a considerable portion of the time during which the examination was made, plaintiff was unconscious.   Counsel for plaintiff then objected that the witness was incompetent to testify as to the result of his examination, as such testimony would be within the privilege provided for by Code, section 4608.   Counsel for defendant insisted that as the witness had already testified, in answer to the preliminary questions propounded by plaintiff's counsel, that plaintiff was unconscious when the examination was made, plaintiff had waived the objection to the competency of the testimony of the witness, and asked to be allowed to interrogate him further; but the court sustained plaintiff's objection to further testimony by the witness as to plaintiff's condition. As to this, complaint is made.   In the first place, the fact that plaintiff was unconscious was disclosed by the witness' testimony in response to the questions first proposed by the defendant, and what was said in response to the preliminary

questions asked by counsel for plaintiff practically went no further. In the second place, what was said as to the condition of plaintiff seems to have been called out for the purpose of determining whether plaintiff had consciously accepted the witness as his physician. Whether or not this was material, we need not decide, for what the witness said in answer to the preliminary questions could not be regarded as affirmative evidence of a material fact on plaintiff's behalf, and therefore was not a waiver of plaintiff's objection to the witness' further testimony as to the plaintiff's condition. The ruling of the court could not possibly have prejudiced the defendant, and cannot, therefore, be made a ground for reversal.

The judgment of the trial court is *affirmed*.