CHARLES SCHMINKEY, Appellee, v. T. M. SINCLAIR & Co., LTD., ET AL., Appellants.

**Master and servant:** ASSUMPTION OF RISK: WARNING: DELEGATION
1   OF DUTY: EVIDENCE. A servant assumes the ordinary risks incident to his employment, including the risk of negligence of fellow servants: but he does not assume new and extraordinary risks known to and created by the master after he has entered upon the service, and of which he has no knowledge. Of such added dangers it is the duty of the master to give warning and this duty cannot be delegated so as to relieve him of liability for non-performance. Evidence held to sustain a finding of new and additional risks and failure to warn.

**Submission of issues.** A party cannot complain of the submission
2   of an issue concerning which there is a substantial conflict in the evidence.

*Appeal from Cedar Rapids Superior Court.*— HON. JAMES
H. ROTHROCK, Judge.

MONDAY, JANUARY 20, 1908.

ACTION at law to recover damages for personal injuries
received by plaintiff while in defendant's employ.   Trial to
a jury, resulting in a verdict for $5,000, which was reduced
to $2,500 by the trial court, and judgment rendered for the
amount of the verdict so reduced.   Defendants appeal.—
*Affirmed.*

*Dawley & Wheeler,* for appellants.

*Barnes & Chamberlain* and *Jamison & Smyth,* for
appellee.

DEEMER, J.— Defendant is a corporation engaged in
operating a packing house in the city of Cedar Rapids, and
in such work it employs a large number of men, and occu-
pies and uses many buildings.   Plaintiff was in defendant's
employ as a general roustabout or utility man, and, at the
time of his injuries, was engaged in cleaning out what is
known as the blood room in one of defendant's buildings.
He was directed by his foreman to go to what was known as
the fertilizer room, which was in another building a few feet
away.   This required him to pass along and over an alley or
passageway between the buildings.   On the north side of
this alleyway was a large building called the slaughter house
and tank room building, and the building in which the blood
room was located was upon the south side of this alley.
While passing along this alley in the course of his employ-
ment plaintiff was struck upon the head by a piece of asphalt
flooring, thrown from the roof of the tank room on the north
side of the alley, and received the injuries of which he com-
plains.   It appears that a few hours before the accident
some carpenters and their foreman, who were also in defend-

ant's employ, had commenced taking out an asphalt floor in the top of the slaughter house in a room extending above the roof of the tank house. This room had windows which looked out upon the roof of the tank house. By direction of their foreman, the men threw broken pieces of asphalt out of these windows and upon the roof of the tank house, and then under the same direction threw the material from the roof of the tank house into the alley or passageway before mentioned, and it was during the course of this work, and as a result thereof, that plaintiff was injured. It appears that the foreman directed the men to be careful about throwing the material from the roof, and to see that there was no one underneath who was likely to be hurt. Defendant contends that the man who threw the piece which struck plaintiff was careful to look before letting loose of the same; that at that time there was no one in sight in the alleyway, and that plaintiff, when this man threw the piece of asphalt, must have been under a belt covering or awning which extended out over the alley some feet above the floor thereof, where he could not be seen, emerging just in time to be struck by the falling piece of floor. Plaintiff had been in defendant's employ for six or seven years, and his duties required him to use this passageway daily during all of this time. Indeed the passageway was in constant use by defendant's employés. When plaintiff entered the alley on the day in question, there was steam blowing out of the tank room window, and he testified that he could see nothing for the steam, and knew nothing about the work which was then being done upon the buildings. There is no claim that plaintiff was notified of the work being done upon the roof of the tank room, or that anything was to be thrown into the alley; and there is no doubt that the men engaged in removing the asphalt floor were directed to do the work in the manner they did by the superintendent of defendant's carpentering and building department. The contentions made for defendant upon this appeal are that plaintiff and

the man who threw the piece of asphalt were fellow servants, engaged in a common employment, and that defendant is not responsible for the negligence, if any, of the man who cast the material from the roof of the building into the passageway.

For the purposes of the case we shall concede that these men were fellow servants; and that for the negligence of an employé defendant is not responsible to another employé who is injured as a result of such negligence. That this general rule is applicable to the relation of master and servant is well understood, and need not now be elaborated. There are, however, certain duties owing by a master to his servant which cannot be delegated so as to relieve him of responsibility for their negligent performance. For instance, the master is required to furnish his employé a reasonably safe place to work; and he must so plan the work in hand as not to unnecessarily expose his employés to danger. Again, it is well settled that a master must not create new and extraordinary risks not present when his employé entered his service, and of which the servant has no knowledge. A servant assumes the ordinary risks of employment upon which he enters, including the risks of the negligence of fellow servants, engaged in the same common enterprise; but he does not assume new and extraordinary risks known to, and created by, the master after the servant enters upon his work, and of which the servant has no knowledge. It is plainly the duty of the master to warn his employé of these new and latent dangers, and this duty cannot be delegated to another in such a manner as to relieve the master from the results of nonperformance. *R. R. Co. v. La Valley*, 36 Ohio St. 221; *Smith v. Car Work*, 60 Mich. 501 (27 N. W. 662, 1 Am. St. Rep. 542); *Northwestern Fuel Co. v. Danielson*, 57 Fed. 915 (6 C. C. A. 636). Stated in another way the rule is as follows: It is a wrong on the part of an agent having the right to order a servant to do certain specific

1. MASTER AND SERVANT: assumption of risk: warning: delegation of duty: evidence.

work to increase the peril of the service by his own negligence. The employé acting under a specific order has a right to assume in the absence of warning or notice that his superior who gave the order will not by his own negligence make the work unsafe. *Taylor v. Evansville R. R.,* 121 Ind. 124 (22 N. E. 876, 6 L. R. A. 584, 16 Am. St. Rep. 372). As to the duty of a master to warn his servant of risks and dangers superadded to the environment after the work has begun, see *Palace Car Co. v. Laack,* 143 Ill. 242 (32 N. E. 285, 18 L. R. A. 215); *Elledge v. R. R. Co.,* 100 Cal. 282 (34 Pac. 720, 38 Am. St. Rep. 290); *Boelter v. Ross Lumber Co.,* 103 Wis. 324 (79 N. W. 243); *Smith v. Oxford Iron Co.,* 42 N. J. Law, 467 (36 Am. Rep. 535). There is, as will be observed, an intimate connection or association between this rule and the one requiring of the master the adoption of a proper plan or system and the establishment of proper rules for the conduct of the work. See *Evansville R. R. v. Holcomb,* 9 Ind. App. 198 (36 N. E. 39); *Hendrickson v. Gypsum Co.,* 133 Iowa, 89; *Klaffke v. Axle Co.,* 125 Iowa, 223.

There can be no doubt under the record here before us that a jury may well have found that defendant was negligent in so planning the work of the removal of the floor as to make it responsible to plaintiff, and no question but that it added new and extraordinary hazards incident to the doing of the work after plaintiff entered its employ without giving him any warning or notice thereof. These were nondelegable duties, and for failure to perform them defendant is liable. The case is easily distinguished from those cited and relied upon by appellants' counsel. These need not be reviewed, for they do not in any manner question the rules which govern the case at bar. The trial court submitted the case to the jury upon the proposition as to whether or not it was defendant's duty to have warned plaintiff of the hazards incident to the throwing of the material into the pas-

sageway between the buildings, and of this defendant has no just ground for complaint.

II.  It is argued that there should have been a verdict for the defendant under the sixth instruction, which reads as follows: · " The evidence shows without. dispute that there was a beaten pathway along the areaway, in which path the employés of the defendant walked, and that persons in this pathway would be in plain view of the men on the roof when throwing the asphaltum therefrom.  If, therefore, you find from the evidence that the plaintiff was not 'walking in said pathway, and that he came into sight of the men on the roof, who threw the piece of asphaltum that struck him, from under the belt awning next to the tank building, when it was too late to prevent the accident, then your verdict should be for the defendant." The difficulty with this contention is that there was a conflict in the testimony regarding the proposition thus submitted.  Plaintiff testified that he was in such a position as that he could not have been under the belt awning just before the asphalt was thrown.  He testified that he was walking in the pathway, and was not under this awning. Moreover, the instruction was more favorable to defendant than the law will justify.  Our conclusions find support in *Nugent v. Packing Co.,* 126 Iowa, 517; *Foley v. Packing Co.,* 119 Iowa, 246; *Meier v. Way-Johnson Co.,* 136 Iowa, 302.

2. SUBMISSION OF ISSUES.

No error appears, and the judgment must be, and it is *affirmed.*