## JOHN WALIGORA v. ST. PAUL FOUNDRY COMPANY.[1]

December 18, 1908.

Nos. 15,786—(74).

**Negligence—Contributory Negligence.**

Plaintiff was injured while using an air hoist, peculiar in this: That the arms by which the load was raised or lowered were in a position opposite to that which they occupied on some fifteen other hoists in the same shop. This hoist, during plaintiff's absence, had been moved from another part of the room to the place where he was working. An air valve had leaked before the accident. Another servant had undertaken to repair it. Plaintiff was not advised of the change in the position of the hoist. To lower a load which he had raised, he used the raising chain instead of the lowering chain. The load went up rapidly, struck the cylinder, was jarred from the grabs, fell, and injured the plaintiff. It is *held:*

1. That plaintiff had borne the burden of showing negligence on the part of the defendant.

2. That there was no reversible error in the charge of the trial court.

3. That the plaintiff was not guilty of contributory negligence as a matter of law.

4. That plaintiff's verdict was not excessive.

**Charge to Jury.**

The use in the charge of the trial court of the inaccurate formula, "There is a duty resting upon the employer to furnish a reasonably safe place to work," to which its attention was not called until the jury had retired, is *held*, under the circumstances of this case, not to have constituted reversible error.

Action in the district court for Ramsey county to recover $25,000 for injuries received by plaintiff while in the employ of defendant. The manner in which the injury occurred is stated in the opinion. The case was tried before Orr, J., and a jury which returned a verdict for $5,000 in favor of plaintiff. From an order denying its motion for a new trial, defendant appealed. Affirmed.

The air hoist referred to in the opinion consisted of a round air chamber or cylinder about eight feet long, in which a piston or rod

[1] Reported in 119 N. W. 395.

with a hook on its lower end was caused to rise by admission of compressed air into the cylinder, or to fall by the expulsion of the air therefrom. The flow of air into and from the cylinder was controlled by valves which were moved by arms on its face with a chain on the end of each arm for the use of the operator, one of which was pulled to raise and the other to lower the load. At the end of the chain was a cast-iron label or handle with the words "lower" or "hoist." On the other hoists in the shop the right hand chain would lower the load, the left hand chain would raise it. In operating the hoists the men generally held both chains so that the movements could thereby be readily adjusted, though the hoists had also springs and eveners, so that when the operator released a chain which he had pulled to lift or lower a load, the arm would go back to place and the motion of the hoist would stop. When plaintiff started to pull the chain the load was four feet above the ground. The distance which the load traveled was sixteen inches, the extreme height to which the rod grabs in use would permit the load to be raised. The other facts are stated in the opinion.

*Keith, Evans, Thompson & Fairchild,* for appellant.

*Moritz Heim, John D. O'Brien,* and *John Dillon O'Brien,* for respondent.


JAGGARD, J.

Plaintiff and respondent, a man forty years of age, who had been ten years in the employ of the defendant and appellant, and for the last eighteen months of which he had worked in the "steel shop" here involved, was injured while using an air hoist. There were some fifteen of these hoists in the shop. On this hoist alone the position of the arms was reversed, so that the chains to raise and lower the load were in a position opposite to that which they occupied on the other hoists. The chain to raise the load on this hoist was where the chain to lower the load on the other hoists was placed. This hoist had long been in service in another part of the shop, but whether respondent had ever worked with it was not shown. During the illness of plaintiff, from which he had just returned to work the morning of the day on which the injury occurred, it had been installed in the other part of the shop, where the plaintiff went to work.

He had not been advised that the hoist which he was using was "reversed" in its action. Plaintiff and his helper were engaged in transferring four large plates of iron, placed one on top of another and weighing about one thousand pounds. They were supported on the hoist with a single pair of what were known as "rod grabs," which consisted of two round rods, made of steel, attached at one end to an iron ring in such a way that they could be spread like tongs, and at the other end turned at an acute angle and extended, forming a hook one and three eighths inches long. Plaintiff, having raised the load from the ground, pulled the chain corresponding in position to that one which on the hoists generally was the lowering chain, but which, because of the reverse arrangement on the hoists he was using, was the raising chain. The load, in consequence, went up, instead of down. The hoist did not stop automatically. Therefore the load went up rapidly, the piston struck hard against the end of the cylinder, and the plates were jarred from the grabs and fell upon him.

The jury returned a verdict of $5,000. This appeal was taken from an order of the trial court denying defendant's motion for a new trial.

1. As to the defendant's negligence, the questions argued pertain to the sufficiency of plaintiff's proof to bear the burden of showing defendant's negligence in each of four different particulars and on the propriety of the charge of the court with respect thereto. It will conduce to brevity to consider these questions together. The allegations of negligence, according to defendant's brief, were that "the hoist (1) was reversed; (2) very quick-acting, of much greater speed than the others; (3) would not stop its motion when the appropriate chain was released, but had to be controlled by using the opposite chain; and (4) was also so defectively constructed and maintained that it would not hold its load." It is conceded that as to the first allegation there was sufficient evidence, and that as to the third allegation there was "some evidence," to sustain the complaint. An examination of the record has satisfied us that such evidence was sufficient, within the familiar rule on that subject.

Defendant's essential argument is that the second and fourth claims of negligence have not been established. With respect to the second, there was direct testimony that the machine was very quick-acting and of much greater speed than the others. One witness testified:

"It worked rapidly. It worked altogether different from the other ones." Another said: "It was a very quick-acting machine." Defendant argues, however, that there was error in submitting this to the jury, because the air by which the hoists were operated came from the same reservoir, through the same main, and through supply pipes to the different hoists which were all the same size and capacity, whereby the loads were raised only as the cylinder filled with air, which was at an equal pressure in each hoist. He insists that in consequence one cylinder could not be filled at a greater rate of speed than another, and that the testimony in contradiction of these physical facts raised no issue, and should not have been credited by either the court or jury. Missouri, K. & T. Ry. Co. v. Collier (C. C. A.) 157 Fed. 347; Chybowski v. Bucyrus, 127 Wis. 332, 106 N. W. 833, 7 L. R. A. (N. S.) 357. It appeared, however, that an imperfection in the spring which closed the air valves after they had been opened by the controller, or in the seating of the valve, had caused a leak, and that shortly before the accident an attempt to repair had been made. The question then arose whether the court could say, as a matter of law, that the defective spring, by not performing its proper function, or the improper seating of the valve itself, might not have been the cause of the "quick acting" of the machine. We conclude that there was no error in the charge of the court in this regard.

With respect to the fourth charge of negligence, the defendant insists that the court erred in charging the jury that the complaint in said action contained, inter alia, an allegation that "the hoist would not hold its load." This assignment is not well taken. The complaint expressly alleges, inter alia, that "said hoist was also so defectively constructed and maintained that it would not hold its load." There was, therefore, no variance between the complaint as the court read it to the jury and the complaint as it actually was. The court did not, however, submit to the jury that precise issue. The whole charge in that connection was as follows: "The question as to the rapidity with which it [the hoist] moves, whether it is faster than the others; the question as to whether it was defective; the question whether * * * it necessitated the pulling of the opposite chain in order to stop after having been put in motion one way or the oth-

er—are in issue, are disputed. These are the questions, therefore, that must be determined by you." The evidence as to the spring and of the action of the machine, which have been referred to, was sufficient to submit to the jury the issue as to whether or not the hoist was defective. If there was any departure between the language of the complaint and the charge of the court, the appellant should have called the court's attention to it before the case was finally submitted to the jury. Consideration of the whole record, however, has led us to conclude that there was no such variance.

Objection was also made to that part of the court's charge: "There is a duty resting upon the employer to furnish a reasonably safe place in which to work." In Poczerwinski v. C. A. Smith Lumber Co., 105 Minn. 305, 117 N. W. 486, a charge similar to the one here in issue was held upon that record not to have constituted reversible error. The correctness of that ruling is so earnestly challenged here that, while we think it is obviously correct, we are constrained to state its rationale somewhat at length. It is elementary that this language, taken by itself, is not a strictly accurate statement of the general rule of law. Its fault is that the liability is rested on the actual condition of the place, irrespective of what care has been exercised, instead of being based on the degree of care observed by the master. None the less, the court's charge, taken as a whole, fully submitted the negligence of the defendant as the issue to be tried, and expressly negatived the idea that the master was, in its own language "required to furnish the safest and best instrumentalities," or that "the master was an insurer."

Defendant lays great stress upon the decision in Armour & Co. v. Russell, 144 Fed. 614, 75 C. C. A. 416, 6 L. R. A. (N. S.) 602, in which it was held that the charge of the court, which stated the true rule on the subject, but also contained the error immediately complained of, entitled to a new trial on the legal presumption that error produces prejudice, and that it is only when the facts appear so clearly as to be beyond doubt that the error did not prejudice, and could not have prejudiced, that the rule that error without prejudice is no ground for reversal is applicable. That authority does not control here, for two reasons: In the first place, the rule as to presumption

of prejudice from admitted error is not so rigid in this state as in this federal circuit. In the second place—and what is of conclusive force—in the federal court, in accordance with common-law practice, exceptions to the charge are taken before the jury retires. In this state, under the statute, exceptions may be taken subsequently. To avoid unnecessary mistrials, and to render futile the objectionable "quest for error," this court has established a plainly proper rule, which has been repeatedly followed, viz.: "The firmly established practice in this state requiring counsel on the trial of an action to call attention to obviously unintentional misstatements and verbal errors in the charge of the court to the jury, if deemed at all likely to be misleading, was not abrogated by the passage of Laws 1901, c. 113," etc. Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754.

The question, then, resolves itself into whether this present instruction falls within this rule. The formula of the trial court was a few years ago in general—indeed, almost universal—use. Thus in Northern Pac. R. Co. v. Peterson, 162 U. S. 346, 353, 16 Sup. Ct. 843, 40 L. Ed. 994, Mr. Justice Peckham said: "There are, however, some duties which a master owes, as such, to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties," etc. In Northern Pacific R. Co. v. Babcock, 154 U. S. 190, 200, 14 Sup. Ct. 982, 38 L. Ed. 958, Mr. Justice White said: "The obligation of the employer to furnish to his employee sound implements is established." The same terminology was also employed in Kinnear Mnfg. Co. v. Carlisle, 152 Fed. 933, 82 C. C. A. 81; National v. Carlson, 155 Ill. 210, 40 N. E. 492; Lewis v. Seifert, 116 Pa. St. 628, 647, 11 Atl. 514, 2 Am. St. 631; Schminkey v. Sinclair, 137 Iowa, 130, 114 N. W. 612; Roach v. Haile, 71 S. C. 79, 50 S. E. 543, 544; Marks v. Harriet, 138 N. C. 401, 50 S. E. 769, 3 Am. & Eng. An. Cas. 812; and in uncounted scores of other cases. The language which, as thus ap-

pears, has been used deliberately and repeatedly by eminent judges of courts of error, and has had judicial sanction for many years, is not the best or most precise. That a jury would be deceived because it discovered a distinction which escaped those eminent jurists for so long a time is not probable; but, if counsel for defendant thought this probable, they could and should have called it to the attention of the trial court before the jury retired.

2. The questions as to plaintiff's contributory negligence were, we think, properly submitted to the jury. The change in the situation with which the employee had been familiar was a proper consideration in determining both contributory negligence and assumption of risk. See Huizega v. Cutler , 51 Mich. 272, 16 N. W. 643; White v. Nonantum, 144 Mass. 276, 11 N. E. 75; Barbo v. Bassett, 35 Minn. 485, 29 N. W. 198; Craver v. Christian, 36 Minn. 413, 31 N. W. 457, 1 Am. St. 675. This conclusion is not altered by the fact that at the end of the chains were cast-iron labels or handles on which were raised words, showing which handle was to raise and which to lower the load. The words "lower" and "hoist," plaintiff says, he did not see, because the lowering chain was out of sight on top of the load, which at that time was about four feet above the ground. Moreover, the obscuring of the light by smoke, the distance the plaintiff was from the labels or handles, and the angle at which they were suspended, directly affected the notice they were intended to convey. Nor was plaintiff necessarily, as a matter of law, negligent in using the rod grabs previously described, rather than one of the other devices supplied by the defendant for that purpose, viz., certain chain grabs, which consisted of chains, at one end of which were flat pieces of steel between two and three inches broad, with a hook from three to four inches long, and also chains ending with a ring, so the load could be held tight by a slip-knot arrangement. The proximate cause of the injury was the unexpected and violent contact caused by the striking of the piston against the end of the cylinder. The failure of the hoist to stop automatically was the proximate cause. In this view, it is unnecessary to enumerate other and sufficient reasons for holding the plaintiff not necessarily negligent in the use of the rod grab.

3. Defendant also assigns as error the charge of the court permitting the jury to consider the question of permanent injuries. This assignment of error is immediately related to another that the verdict is excessive and appears to have been given under the influence of prejudice and passion. These assignments will be considered together. Only one expert was called as a witness. He found the plaintiff with a fractured pelvis, unable to move his legs or turn over in bed. Plaintiff suffered a great deal from shock. His urine had to be catheterized. The physician was at one time apprehensive of his life. He thought there ought to be some improvement, but whether there would be entire recovery he was unable to say. At the end of more than a year the plaintiff was unable to do any manual labor. He could not cross his legs or stand upon them for any length of time. In view of this state of facts, we are of opinion that there was no reversible error in the charge, and that the verdict, which received the sanction of the trial court, is not so excessive as to justify us in setting it aside.

Affirmed.

On April 16, 1909, the following opinion was filed:

PER CURIAM.

The application for reargument by appellant herein is hereby denied.