## EMERSON F. BROUGH v. DWIGHT M. BALDWIN.[1]

June 25, 1909.

Nos. 16,089—(114).

**Question for Jury—Evidence.**

> The plaintiff, while working near a machine which was in defective condition, was struck in the eye by a metal cutting. It is *held* that the evidence upon the issues of the defendant's negligence, and whether such negligence was the cause of the injury, was sufficient to carry the case to a jury, and sustain a verdict in favor of the plaintiff.

**Instruction—Harmless Error.**

> An instruction that "it was the duty of the defendant to furnish the plaintiff with a reasonably safe place in which to perform his work, and with reasonably safe machinery with which to do that work," *held* upon this record not prejudicial error.

Action in the district court for Clay county to recover $20,000 for personal injuries sustained while working in defendant's flour mill.    The case was tried before Taylor, J., and a jury which

1Reported in 121 N. W. 1111.

returned a verdict in favor of plaintiff for $5,250. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*L. T. Chamberlain* and *C. A. Nye,* for appellant.

*M. A. Hildreth, Glassford & Lacy, E. C. Sharp,* and *F. H. Peterson,* for respondent.

ELLIOTT, J.

In an action to recover damages for personal injury the plaintiff recovered a verdict, and the defendant appealed from an order denying his motion for judgment notwithstanding the verdict or for a new trial. The evidence tended to show the following facts and conditions: Respondent, Emerson F. Brough, was employed by the appellant as a flour packer. During the night of October 23, 1906, certain machinery, near and in connection with which Brough was required to work, became defective and out of repair. The foreman, Heath, and an employee named Prohaske, undertook to repair this machinery, and in so doing took an old pulley and clutch from the shaft, and placed thereon a new pulley and clutch. It appears that as thus repaired there was a quarter of an inch play between the hole of the pulley and the place on the shaft where the pulley revolved. The new pulley and clutch were placed on the old shaft for the purpose of connecting with the flour packer and giving it motion. Within a half hour after these repairs were made Prohaske discovered that the friction clutch was cutting and wobbling. He then called the night foreman's attention to the fact that the machine was cutting and throwing off particles of iron, and the night foreman stated that the machine would have to run in that condition until morning. At seven o'clock on the morning of October 24, 1906, Brough commenced work packing flour. He had no knowledge, and was not informed, that the repairs had been made during the night, or that the machine was in a dangerous condition. When he attempted to start the machine there was some difficulty, and he looked up at the pulley to see if the belts were on. At that moment a sharp iron particle struck him in the eye. There were no other machines near Brough that were running at the time.

It thus appears, as claimed by the respondent, that there is evidence at least tending to show that the machine was out of repair and defective, that the defendant attempted to repair it, that the repairs were improperly made, that the defendant had knowledge that pieces of iron or shavings of cast iron or steel were being thrown off, and that Brough had no knowledge of this condition.

The appellant claims that the character of the accident and the circumstances under which it happened were such that he had no notice of any defect in the machine which was likely to produce injury and no notice of any danger from it, and therefore did not fail in the use of reasonable care and was not guilty of negligence. Upon this issue the evidence was sufficient to take the case to the jury and to sustain a finding in favor of the plaintiff. The appellant claims, also, that the cause of the accident, the source from which the particle of iron came, and whether it resulted from any defect in the machine, are all conjectural. But there was evidence tending to show that this machine was out of repair and that iron cuttings were being thrown off. In view of the way in which the accident occurred, the jury was justified in inferring that the particle which was found in the respondent's eye came from the defective machine.

In describing the manner in which he was injured, Brough testified: "Well, I emptied out these other two machines, and came back to this No. 1, this Invincible machine, and then before I came to this machine—there is a clock on the floor, and I always notice the clock to see how far the flour is ahead of me, and I noticed the clock was nine o'clock. I had been two hours on these three machines, and then I came up to No. 1 machine, and I took hold of the lever, and she didn't start, and I looked up to see if there was a belt on the pulley, and when I looked up something struck me in the eye and on the cheek, and I throwed my hand up on to my face, and it was hot, and burned, and I turned around to Mr. Swanson and says: 'Something is coming from that belt * * * I have got something in my eye. I wish you would look in it.'"

The witness Swanson testified: "He said: 'I got something in my eye; something struck me on the cheek.' I walked right around that tube, and took the brush off from the spout, and started to sweep the

tube. I saw something dark on the floor; and took it and looked at it, and saw it was iron cuttings; right underneath the pulley and the friction. * * * It was on the floor, and in a streak here. Black * * * I looked up to where they were coming from and seen some coming flying from the friction and the pulley; * * * seen them on the floor first * * * seen them coming from the pulley and the friction up above, * * * the pulley and the friction to that Invincible machine.' Q. Was there any particles of iron coming from any of those other machines there on that occasion? A. Not that I know."

In view of this and other testimony, the jury was justified in inferring that the particle of iron that struck Brough in the eye came from the machine near which he was working, and which was in a defective condition. We find no evidence whatever that any other piece of machinery in the building where Brough was working was throwing off iron or any other substance.

Numerous assignments of error are based upon alleged rulings in the reception of evidence. We have considered all of these assignments, but find no errors which would justify reversal.

The jury returned a verdict for the sum of $5,250. The appellant claimed that this is excessive. The sight of the eye was practically destroyed, and we cannot say as a matter of law that the verdict was excessive.

Error is also assigned upon the instruction of the court that "it was the duty of the defendant to furnish the plaintiff with a reasonably safe place in which to perform his work and with reasonably safe machinery with which to do that work." In view of the recent decisions of this court (Waligora v. St. Paul Foundry Co., 107 Minn. 554, 119 N. W. 395; Poczerwinski v. C. A. Smith Lumber Co., 105 Minn. 305, 117 N. W. 486; Rudquist v. Empire Lumber Co., 104 Minn. 505, 116 N. W. 1019), the majority of the court (the writer being the minority) is of the opinion that the giving of the instruction in this form was not prejudicial error. It is conceded that the language does not correctly express the correct rule of law; but when read in connection with the entire charge, it is apparent that the jury could not have been misled. The reason-

ing upon which this conclusion rests is fully developed in Waligora v. St. Paul Foundry Co. The fact that counsel excepted to the language when the charge was given to the jury can have no logical bearing upon the question. If the charge as a whole conveyed the idea to the jury that the defendant was obliged to use ordinary care only to furnish a reasonably safe place for the employee to work and reasonably safe machinery with which to do his work, the use of the particular language was without prejudice, and therefore the error would not justify this court in granting a new trial. This charge, as a whole, was clear and eminently fair to the defendant.

The order of the trial court is therefore affirmed.