# FRANK A. KOREIS v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

### July 23, 1909.

### Nos. 16,047—(71).

**Defective Locomotive — Duty of Train Engineer.**

Plaintiff, defendant's engineer, when half way between two stopping places, found that fastenings of the eccentric straps on the engine were defective and the two halves of those straps partially pulled apart. Having made imperfect repairs, he proceeded to the next station for which he had orders, a distance of nineteen miles. When the engine was within about half a mile of that station, the left eccentric strap broke, threw back the lever, and broke his arm. It is *held*:

1. The complaint was valid as against objections made after the case had been called for trial and plaintiff had introduced some evidence.

2. A railroad engineer owes a duty to the public, as well as to his employers, and is justified in taking much greater risks than employees in other occupations, without necessarily forfeiting the right of action for injuries resulting from his master's negligence of which he has knowledge. While the emergency of railroad traffic will not excuse the servant for running the risk of almost certain injury, it is only in extreme cases that he will not be warranted in operating a temporarily repaired engine until he reaches the next station. In view of the circumstances of this case in general, and of the particular fact that the engine in this case ran eighteen and one half out of a possible nineteen miles with entire safety, it was a question of fact for the jury whether plaintiff assumed the risk.

3. Plaintiff was not guilty of contributory negligence as a matter of law.

4. Defendant's negligence was a question of fact for the jury, because of

[1] Reported in 122 N. W. 688.
108 M.—29.

testimony that the defective condition of the eccentric strap was previously reported to defendant, and that the bolts by which the eccentric straps were attached were old and thread-worn, and because of the occurrence of the accident within a short distance of the place of inspection. Sheedy v. Chicago, M. & St. P. Ry. Co., 55 Minn. 357, followed and applied.

5. It was for the jury to determine whether or not defendant's negligence was the proximate cause of the injury.

6. That the court charged defendant's duty to have been to furnish plaintiff instrumentalities safe for use is *held* not to have been reversible error, because the court's attention had not been called to the inaccuracy in language before the jury retired. Waligora v. St. Paul Foundry Co., 107 Minn. 554, followed and applied.

Action in the district court for Waseca county to recover $15,000 for personal injuries, while in the employ of defendant company as a locomotive engineer. The complaint alleged that engineers in the defendant's employ were not afforded opportunity to inspect and care for their own engines, an engineer called for duty being obliged to take the engine then in line for service; that while in charge of a certain engine to be used in hauling a certain freight train, "the left go-ahead eccentric strap and other parts of the machinery of said engine broke; by which the reverse lever, which was then in proper position for the forward motion of the engine, was suddenly thrown backward and struck and caught the plaintiff's left arm and broke his forearm and wrist." The answer alleged the contributory negligence of plaintiff.

The case was tried before Buckham, J., and a jury which rendered a verdict of $3,000 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*John I. Dille, Peter McGovern, W. H. Bremner* and *George W. Seevers,* for appellant.

*Albert E. Clarke* and *D. F. Carmichiel,* for respondent.

JAGGARD, J.

Plaintiff and respondent, an engineer in the employ of defendant and appellant railroad company, when half way between two stopping points found that the keys and nuts for the bolts which fastened the left eccentric strap to the eccentric were gone and that the two

halves of those straps had pulled partially apart. He repaired the engine by restoring the left eccentric strap to its proper position, putting a nut on the top of the bolt and a wire in the hole made for key to keep the nut in place. He then proceeded to the station for which he had orders, a distance of nineteen miles. When within about half a mile of that station, the left eccentric strap broke, threw back the lever, and broke respondent's arm. The jury returned a verdict for $3,000 for plaintiff. This appeal was taken from the order overruling appellant's motion in the alternative.

1. Defendant's first point is that the complaint does not state a cause of action. The question before us is not whether that complaint is technically perfect, but whether it is valid as against objections made after the case had been called for trial and plaintiff had introduced some evidence. The pleading charged defendant with negligence, and advised that the accident was due to an imperfection in "the left go-ahead eccentric" and other parts connected therewith. That defendant was in any wise prejudiced by any inartistic imperfection is not suggested. The assignment of error is without merit.

2. The second point argued by defendant is that "plaintiff acted for the defendant in deciding to repair the engine, made the repairs, and voluntarily used the engine after it had been repaired and assumed the risk." Defendant's rules, of which plaintiff had full knowledge, required the plaintiff to take every precaution for his safety, to resolve all doubts in favor of the safe course, and never to take an unusual risk. Plaintiff was familiar with the relation of the eccentric straps to the lever that caused the injury and the probable consequences of a break in an eccentric strap, the effect of the loosening of the strap upon the eccentric, and the danger of the parts coming off. Plaintiff undertook to repair, and to proceed with the engine as repaired, as part of his employment. He was at perfect liberty to proceed no further when he discovered the break, and to report the accident to the master mechanic, and to await his orders. He had the same freedom in deciding whether he could himself make the repairs and proceed in safety. He was in full possession of all the facts and in absolute authority. The failure to make the engine safe was his failure. Having made the repairs, and having proceeded to use the engine with full knowledge of all facts, and necessarily appreciating

all the danger himself, he must be held to have assumed the risk in so doing.

This argument by defendant the learned trial judge recognized as the only serious question in the case. In his memorandum he said: "Whether or not an engineer under such circumstances should abandon his journey and report the condition of matters to headquarters for instructions, or should make such temporary repairs as were possible and proceed for the short remainder of his run, was for the engineer in the exercise of his best judgment to determine; and that he does not necessarily assume the risks of the journey because he erred in judgment. It is not every defect in his engine discovered by the engineer that would justify him in stalling his train and waiting for repairs from distant headquarters, and whether any particular case required such action must necessarily be left to the good judgment of the engineer, both on general principles governing the duty of an employee to his master and the special rule of the defendant company given in evidence at the trial. Whether the engineer in this case was required to do one thing or the other was, I think, for the jury to say."

His conclusion was, we are satisfied, correct. Mr. Labatt has thus summarized the authorities: "The case of a railway servant stands upon a special footing, as he is deemed to owe a duty to the public as well as to his employers, and the effect of the decision, as a whole, is that he is justified in taking much greater risks than employees in other occupations, without necessarily forfeiting his right of action. Under ordinary circumstances, such a servant seems to be, at all events, entitled to remain at work until he obtains an opportunity of notifying the proper agent of the master as to the existence of danger. It is only in very extreme circumstances that he will not be warranted in remaining on a train until it reaches the next station. But the exigencies of railway traffic will not excuse the servant for running the risk of almost certain injury." [Labatt, Mast. & S. p. 740, § 302a.]

It would merely encumber the reports to here discuss or to amplify the authorities there cited. That in the case at bar the engineer's course was a reasonably prudent one the jury might have concluded from many facts generally, and from the particular fact that the en-

gine ran eighteen and one half miles out of a possible nineteen with entire safety.

The authorities to which defendant calls our attention in this case do not at all control. It is to be borne in mind that at this point defendant is arguing and we are deciding the question of assumption of risk, and not the question of defendant's negligence.

In Scott v. Eastern Ry. Co. of Minn., 90 Minn. 135, 95 N. W. 892, a freight conductor was held guilty of contributory negligence in using a step on a car, which step was in bad order. The defect existed when plaintiff was directed to take the car out. That case is as foreign to the immediate issue as is Nordquist v. Great Northern Ry. Co., 89 Minn. 485, 95 N. W. 322, in which a conductor of a freight train was held guilty of contributory negligence as a matter of law in not complying with the special rule as to conduct of conductors at a mountain tunnel, requiring them to inform the engineers how many cars of air were working. Plaintiff had no personal knowledge that the air was working on fifteen cars back of the engine. "Plaintiff did not inform the engineer how many cars the air was working on," as the rule imperatively required; "for he had not informed himself in the premises." The train proceeded, became unmanageable, ran at a dangerous rate of speed through the tunnel to a point below where it left the rails at a curve, was thrown down the mountain side, and plaintiff injured. The other decisions to which we are specially referred in this connection set forth admitted, familiar, but irrelevant, principles.

Nor is the case controlled by defendant's authority to the effect that a servant who is employed to repair machinery, who as a part of his duty handles defective machinery, assumes all risks arising from such defects. That in Kelley v. Chicago, St. P. M. & O. Ry. Co., 35 Minn. 490, 29 N. W. 173, a yard brakeman engaged in handling disabled cars assumed the risk of handling such cars is in no wise inconsistent with the conclusion here reached. Nor does defendant strengthen its position in this case by citing Broderick v. St. Paul City Ry. Co., 74 Minn. 163, 77 N. W. 28, in which a servant, employed to replace rotten wooden poles with iron poles, placed a ladder against a wooden pole and was injured by jumping off when the pole broke at the ground, or Saxton v. Northwestern Tel. Exch. Co., 81 Minn. 314,

84 N. W. 109, in which a servant was injured by a fall from a pole which he had climbed for the purpose of detaching and removing a wire preparatory to taking the pole down.

3. Defendant's third point is that plaintiff was guilty of contributory negligence. We are at a loss to see how possible failure on plaintiff's part to originally inspect the engine has any direct connection as the proximate cause of plaintiff's injury. See Le Duc v. Northern Pac Ry. Co., 92 Minn. 287, 288, 291, 100 N. W. 108. If plaintiff was guilty of contributory negligence at all, it was when he started the engine in motion after he himself had made repairs and necessarily knew the defective condition of the eccentric. The view previously expressed as to his conduct controls, and justified the trial court in trying the question as one of fact.

4. Defendant further insists that the verdict was not justified by the evidence. Here defendant urges that it was not shown to have been negligent. On defendant's statement of facts it would be a serious question whether its conclusion did not follow. The record contains enough to fully justify the trial court in submitting the question to the jury and in sustaining its verdict for the plaintiff. Defendant's own roundhouse foreman testified that the defective condition of the eccentric of the engine in question had been reported by the engineer who had previously brought it in, that entries in the road book had been made with respect thereto, and that certain repairs were thereupon made. Plaintiff discovered that the bolts by which the attachment was made were old and their threads worn. Moreover, the occurrence of the accident within a short distance from the place of inspection was evidence of negligence. Sheedy v. Chicago, M. & St. P. Ry. Co., 55 Minn. 357, 57 N. W. 60. And see Cederberg v. Minneapolis, St. P. & S. S. M. Ry. Co., 101 Minn. 100, 111 N. W. 953. It is so plain that the jury might have properly found the negligence of the defendant to have been the proximate cause of the injury that it would justify no elaboration here.

5. Finally, defendant urges that it was error for the court to have instructed the jury, as it did, that it was defendant's duty to furnish plaintiff instrumentalities that were safe for use. The attention of the court was not called to this matter before the jury retired. Stein-

bauer v. Stone, 85 Minn. 274, 88 N. W. 754. Within the familiar rule on the subject, this did not constitute reversible error. Waligora v. St. Paul Foundry Co., 107 Minn. 554, 119 N. W. 395. It is to be noted that in Kreigh v. Westinghouse, Church, Kerr & Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984, Mr. Justice Day uses both formulas. No prejudice appears.

Affirmed.