FRANK MULLIN *vs.* NORTHERN MILL CO.

Argued Dec. 16, 1892.   Decided April 24, 1893.

**Personal Injury, from Negligence.**

> Where a mechanic, whose general duty it was to assist in making repairs in a sawmill, was directed to replace a chain, which had fallen from its place on a wheel, and which was operated in connection with a dangerous machine, claimed not to have been properly covered or guarded, and in which he was injured while engaged in working near it, *held,* upon the evidence in the case, that the questions of defendant's negligence, considered as the proximate cause of the accident, and of plaintiff's contributory negligence, were for the jury. *Held,* also, that the evidence

was sufficient to sustain a finding that he was properly engaged, as a servant of the defendant, in the course of his employment when the accident occurred.

Appeal by defendant, the Northern Mill Company, from a judgment of the District Court of Hennepin County, *Smith*, J., entered August 4, 1892, against it for $3,074.75.

The plaintiff, Frank Mullin, was on October 29, 1890, employed by the defendant, a corporation, in its sawmill at Minneapolis as a blacksmith, repairing the ironwork, and keeping its tools in condition. While at work on that day putting the rosser chain in place on a sprocket wheel, his right leg was so injured that it was necessarily amputated above the knee. He claimed that his injury was caused by the carelessness and negligence of the defendant in omitting to properly house and cover the revolving knives of the rosser. He had a verdict April 28, 1892, for $3,000, on which judgment was entered.

*Kitchel, Cohen & Shaw,* for appellant.

*Christensen & Tuttle,* for respondent.

VANDERBURGH, J. This action is brought to recover damages for a personal injury suffered by the plaintiff while at work in defendant's sawmill. The plaintiff was at the time attempting to replace a chain used to draw logs up through a "siding machine" upon a "sprocket wheel," by means of which the chain was operated. This wheel was about twenty inches in diameter, and was furnished with strong teeth, which caught the links of the chain successively, and thus pulled the logs through the machine. The machine was used to cut off the bark from the logs preparatory to sawing, and was composed of two revolving adjustable discs, with projecting knives, between which the logs passed. Slides or ways were constructed, along which the logs passed beyond the wheel. The wheel was situated about four and a half feet in the rear of the machine. There was a sheet-iron cover upon the upper side of the frame, upon which the discs were supported and operated, with a semicircular opening, eighteen inches in diameter, through which the logs passed on the slide or ways. On each side of the slide next the machine there had been placed blocks or skids, called "guides," because they were intended to keep the logs in place on the slide as they emerged

from the machine. They were about eight inches high, eight inches wide at the bottom, and were beveled off on the inside, so as to adapt their shape to their use as "guides" for the logs. To make the apron fit over the guides, slots or openings were cut therein, so that when they were removed the hole in the apron was that much enlarged in size, and the risk of accident and injury from the revolving knives correspondingly increased. If the chain ran off the wheel mentioned, it would cease to move until replaced. The accident to plaintiff occurred in October, 1890, and he was at the time working as a blacksmith in the mill, where he had been so engaged since April preceding. The mill was operated both day and night. It was towards evening when the accident occurred, and the mill was lighted up for the night. Just prior to the accident the chain ran off the wheel, and rested on the shaft by the side thereof, and the operator of the machine called on the plaintiff to fix the chain on.

All the material points raised by the appellant are necessarily involved in its request to the court to direct a verdict upon the evidence in its favor, which was refused. Included in these are the questions chiefly discussed by the counsel for the appellant in his brief,—that of the defendant's negligence and plaintiff's contributory negligence, the assumption of the risk by him, and whether his interference was entirely beyond and outside the duties of his employment, so that the defendant owed him no duty in the premises.

1. The first and most serious question in the case is that of defendant's negligence as related to the injury in question. While plaintiff was engaged in attempting to replace the chain upon the wheel, occupying a position between the machine and the wheel, his foot slipped into the open space left in the cover in the condition it was then in, and was caught and destroyed by the knives. It is evident that the machine, when in motion, was quite dangerous to anything coming within the range of the knives, and it was proper that it should be covered for the protection of employes working around it, as they might frequently be required to do; but an imperfect protection might be more dangerous (because misleading) than no covering at all. *Craver* v. *Christian*, 36 Minn. 413, (31 N. W. Rep. 457.) The plaintiff testifies: "I went there to get that chain on. I was called up to fix the chain. I took an iron bar, and pried the chain over. I

stood as close to the wheel as I could.    I tried to pry the chain over, and the chain slipped out, and away I went.    I was out by the wheel. I was standing in this way, [indicating.]    My foot went in sidewise." The "slide" was sixteen to eighteen inches from the wall of the mill, and the plaintiff's testimony tended to show that the position he occupied while attempting to raise the chain upon the wheel was the proper one.    The situation of the premises, the character of the machine, and its condition, and the manner in which it was operated, the likelihood of accidents, and the danger which might reasonably be expected to be incurred in and about the same, taken together, make the case one, we think, proper for the consideration and practical determination of the jury.    As practical men of affairs, they were in a better position than this court can be to judge of the effect of the absence of the guides, which plaintiff's evidence tended to prove had been removed before the accident.    The person operating the machine and directly in charge of it must be presumed to know whether they were present in place or not, and since, in such matter, he represented the master, no further notice of the defect or increased danger was required.

2. There is still less doubt as to the propriety of the submission to the jury of the questions of plaintiff's contributory negligence, or the assumption of the risks by him.    He was called on to act promptly while the mill was running and operatives waiting.    He says he supposed the machine had been stopped, since the chain was off, and the logs were not coming through.    The mere turn of a lever would stop it, without affecting other machinery.    What he did, and what position he occupied, and whether he knew the condition of the machine, or ought to have known the danger, whether under all the circumstances his conduct was negligent, were matters for the jury.

There were many things to be considered, and how a reasonably prudent man should proceed in such an emergency could best be determined by them.

3. The court was asked to rule that the plaintiff was a mere volunteer in doing the work in which he was engaged when he was injured, and we are to determine whether the court erred in submitting the question to the jury.

We think there is evidence in the case reasonably tending to show that the work was not beyond the scope of his employment, or, in any event, that he was acting at the time under the direction of defendant's authorized agent. At the time of the accident neither the millwright nor foreman was in the mill. The mill was running and lighted for the night, and there were forty workmen. And the evidence tends to prove that in a case like this, when a machine got out of repair, it was the duty of the man in charge to see that it was put in repair. The foreman, who was not present at that time, testified: "Whenever anything broke of that kind the man that ran the machine or the millwright fixed it. If the millwright was not there, when I was not there, the machine would lie still until I came, if he could not do it himself, or get some assistance to do it." Plaintiff had been previously required to assist in repairing the chain, and in this case he responded in good faith to the call of the operative to put it in place.

Under such circumstances, to prevent a suspension of work in the mill we are unable to see why the practical common-sense rule should not apply which would authorize the operative of the machine to call for assistance upon any one of the employes whose business it was to assist in making repairs.

Order affirmed.

(Opinion published 55 N. W. Rep. 1115.)