Goff vs. The Chippewa River & Menomonie R. Co.

GOFF, Respondent, vs. THE CHIPPEWA RIVER & MENOMONIE RAILWAY COMPANY, Appellant.

*October 2 — October 17, 1893.*

*Master and servant: Injury to servant working in dangerous place without direction: Special verdict: Inconsistent findings.*

1. An employer is not liable for injuries sustained by an employee in an unsafe or dangerous place in which he was working without any express or implied direction from the employer, even though the same work had been done at other times by other employees in the same place.

2. A special verdict finding that plaintiff, an employee of the defendant corporation, was not, when injured, engaged in the regular course of his duties at the place where directed by defendant's servants charged with the duty of designating the proper place for the performance of such duties; that the place where he was injured was the place where the work he was doing had previously ordinarily been performed, to the knowledge of defendant's agent; that it was the place provided by the defendant for the performance of that work; that it was not reasonably safe for that purpose; and that the proximate cause of plaintiff's injury was a want of ordinary care on the part of the defendant in not providing a reasonably safe place for him to be while doing his work,— is *held* to be inconsistent and not to sustain a judgment for plaintiff.

3. Where a considerable force of men is engaged in a business necessarily somewhat dangerous — in this case the loading of logs upon cars,— it is the duty of the employer to have some one in attendance to see that the men have reasonably safe places in which to do their work.

APPEAL from the Circuit Court for *Chippewa* County. Action by an employee for personal injuries, brought against the defendant, a railway company organized for the purpose of transporting saw logs. The railway in question runs over a pond used for holding logs, which are drawn up out of the pond upon a loading dock by means of an endless chain and slide, and are rolled from thence

upon the cars. At the place in question there is a main
track and a side track, all built on piling. Piles were
driven at intervals on the east side of the main track and
west of the side track, where said tracks lie near together,
and a timber or cap piece was framed on the top of the
piles to prevent logs, when rolled from the loading dock
upon the bunks of the cars, from rolling over and off upon
the other side. The main track was planked in the middle,
and the loading dock and rails were long enough to admit
of loading three cars at a time, each car being twenty feet
long. The bunks or bearers extend on each side about two
feet over the track, and, when a car passed which stood on
the side track east of the two piles designated "A" and
"B," the distance between the end of the bunk and each
pile would be about four inches. Between the piles and
the west edge of the side track and east of the piles "A"
and "B" the space was pretty much filled up with plank.
At this point the plaintiff was standing for the purpose of
counting the logs and fastening the chains to secure the
logs on the car after they were loaded. The testimony
tended to show that he had commenced this work in the
morning, at the direction of one Moore, the defendant's
foreman, who had explained to him in a general way what
was required of him. While he was busily engaged stand-
ing opposite the piles "A" and "B," with one foot on a
log and the other on some plank between the two tracks,
with his back towards the side track, an empty car was
driven down the side track without any warning, and its
bunk struck him above the hips, and forced him up against
the pile designated "B," and through between the end of
the bunk and the pile, a space of only four inches, whereby
he was bruised, crushed, and greatly injured. It was
charged in the complaint that though the defendant had
notice of and well knew the dangerous character of the
place, it had neglected to furnish the plaintiff a safe, proper,

and convenient place to stand and perform his said work while so employed as aforesaid, whereby he received the injuries of which he complained.

In respect to the hiring of plaintiff and his being set at work where he was injured, he testified that Newton Mills, the defendant's superintendent in charge of the work, hired him and spoke to him of working at the foot of the slide running down into the water, where a man stands with a pike pole and swings the logs into a straight line, so that they go up the slide to the dock, and that was the work he spoke to him about doing when he hired him. That he went to work on the dock May 7, 1890, counting logs and hooking bunk chains at a different place from the logging slide. That he commenced that kind of work at the request of Moore, foreman of the defendant in charge of the operations there, Mills then being absent, who pointed out to him the work of counting the logs, while they were standing on the cap piece over the piles, showing him about counting and hitching the bunk chains, and he told him that the place to hitch the chains was where he was afterwards hurt. That he had never done that work before; first learned that the side track was too close when he got caught. That Mr. Mills did not tell him to go up there to count logs and do up the ends of chains. "I was not hired for that purpose. Moore was at work on the works like the rest. He had general oversight." That he did not attempt to direct plaintiff where to stand. That there was no other place where he could stand and hook the chains but where he did. And there was testimony given tending to show that Moore pointed out to the plaintiff where to hook the chains, in the same place where he was hurt.

Mills, the superintendent, testified that he never knew of Moore being foreman. That he never had any authority from him or the company that he ever knew of to hire or discharge men. That he was the timekeeper. "From time

Goff vs. The Chippewa River & Menomonie R. Co.

to time I gave him special instructions with reference to matters. He had no other authority than to see that the men worked as I directed them, and he had no authority to change any of my directions. He had been in the employ of the defendant for about eight years." That he first talked with plaintiff about working at the slide, but when he came around again he told him he had a man for the job he wanted. That he wanted a man to tie up the chains if they were left dangling, and to count these logs, and get the cars in readiness for pulling from the dock. "He said that would suit him." I told him that I wanted him to do the work, and how to do it. That when the switch engine had pulled down these six cars he was to adjust the brake stems in their sockets, count the logs, and fasten the chains if any should be left dangling. Hicks counted some logs in front of the loading dock for probably four or five days. He (Mills) had hooked chains in the same place by going in between the piles, which was practically the very best way to hook them. It was optional with the man who had it to do. When I was present I had supervision of the operations. Did not have a man to act in that capacity. Moore kept time of the men. "He did not have control of the operations when I was not there. Nobody had control of them. They ran without anybody being in control of it. Moore did not direct the operations, and did not give the men instructions what to do. I did not know that he directed them. He was keeping time; did not act as a foreman generally acts. He worked like the rest of the men I was in charge of. I was usually there when it was necessary to change anybody. When not there, there was no changes made. When absent, I knew I could send word to him, and communicate through him with the other men, and he would do the talking to the men for me."

Moore testified: "I was simply keeping the time and looking after the thing. I hired out that summer, looking

after loading logs, just simply keeping the time.   On the
morning in question I saw plaintiff about six o'clock.   Told
him to go out and count the logs.   No one gave me any
instructions to tell him that.   I told him to go to work
counting the logs, because I wanted a man to do it.   That
morning I said to him, '*Mr. Goff*, you can go out and keep
tally on these logs to-day.'   I did not · tell him where he
was to do it."   He denied telling plaintiff to go to where
he was at the time of his injury.   Said that he did not ex-
plain to him where he was to count the logs.   Up to then
had never employed or discharged a man.   " I had charge
and looked after the work when Mr. Mills was not there.
If he was not there I would show them.   I was the person
who gave directions if Mr. Mills was not here.   I was the
person in charge when Mr. Mills told me; was the person
who had charge when he was not there.   I was just the
timekeeper; went by Mills' instructions.   Mr. Mills gave
me no instructions about *Goff*.   I set him to work the same
as others."

The answer was, in substance, a general denial, but testi-
mony was given tending to establish other material allega-
tions of the complaint.   The court left to the jury the
question " whether the plaintiff was engaged, when injured,
in the regular course of his duties as one of the defendant's
employees at the place where directed by defendant's serv-
ant charged with the duty of designating the proper place
for the performance of such duties;" but in this connection
instructed them " that the evidence would not warrant
them in finding that the witness Moore was charged with
the duty of locating plaintiff at his work, because called a
foreman by some of the witnesses; that it must be held,
under the evidence, that in all he did he was a mere co-
laborer with plaintiff, and was not charged with the duties
of the principal; that for the purposes of this action New-
ton Mills was the vice principal, and in determining whether

plaintiff was stationed where he was at the time of the injury complained of by authority of defendant's agent charged with the duty of designating the place for him to perform his labor, Newton Mills must be considered to have been such agent;" and the jury answered said question in the negative.

Other questions and answers followed. "(2) Did Newton Mills instruct plaintiff to do his work after the cars were moved away from the loading dock to the main track? A. No. (3) Was the place where plaintiff got injured the place where the work he was doing had previously ordinarily been performed, to the knowledge of defendant's agent, Newton Mills? A. Yes. (4) Was the place where plaintiff was injured the place provided by defendant for the performance of the work plaintiff was engaged in? A. Yes. (5) Was the place where the plaintiff was injured reasonably safe for the performance of the work he was engaged in? A. No. (6) Was the risk to which plaintiff was subjected while doing his work apparent to a person by ordinary observation, circumstanced as plaintiff was in the performance of such work? A. No. (7) Was the proximate cause of plaintiff's injury a want of ordinary care on the part of defendant in not providing a reasonably safe place for him to be while doing his work? A. Yes. (8) Was plaintiff injured by reason of negligence on the part of the defendant's servants in operating the cars? A. No. (9) Was the danger of the plaintiff's position as apparent to the plaintiff as to the defendant? A. No. (10) Was there any want of ordinary care on the part of the plaintiff that contributed to the injury received? A. No."

The jury assessed plaintiff's compensation at $800. A motion to set aside the verdict and grant a new trial because contrary to law and evidence was denied, and judgment was entered on the verdict, from which the defendant appealed.

For the appellant there was a brief by *Jenkins & Jenkins*, and oral argument by *John J. Jenkins*.

For the respondent there was a brief by *T. F. Frawley* and *W. H. Stafford*, and oral argument by *Mr. Stafford*.

PINNEY, J. It is the duty of the master or employer to furnish his servant or employee a reasonable safe place in which to perform his work, and suitable and reasonably safe instruments with which to perform it. But it would seem that it is not sufficient to charge the employer with neglect in this respect that he had hired one to work for him, and that he, without the knowledge, authority, privity, or consent of his employer, and of his own volition, entered upon the work of the employer in, and occupied in its performance, an unsafe and dangerous place, even though the same service had been performed at other times by other employees for the employer in the same place. The employer is responsible only for his express or implied direction to an employee to work in an unsafe or dangerous place. The work of the employer is to be under his own control, and under the responsibility which the law places upon him; and it is for him or his lawful agent to give such orders or directions as he may judge discreet in respect to the place where his employees shall work, having in view their skill, prudence, and experience. He or his rightful agent may assume the risk in any given case, but the employee cannot of his own mere unauthorized motion take the risk, and hold the employer responsible for disastrous consequences. The liability does not exist unless the employer or his agent knows, or has good reason to believe, that the employee is serving him in a dangerous place or position; for without such knowledge the duty of warning or protecting the employee does not arise and will not exist, for the plain reason that the liability is not absolute, but relative, and is founded solely on the employer's

negligence, which cannot be affirmed without knowledge or notice of duty in the particular instance, such as would warn the employer and afford him a fair opportunity to discharge it.

In the present case it is found by the verdict that "the plaintiff, when injured, was not engaged in the regular course of his duties as one of the defendant's employees at the place where directed by defendant's servants charged with the duty of designating the proper place for the performance of such duties." The defendant is a corporation, and could act and give direction only by or through its proper officer or agent. There is no pretense that any one in fact assumed on behalf of the defendant to direct where the plaintiff should work, or what he should do, except the foreman, Moore; and as to him the court withdrew from the consideration of the jury all he said or did in that direction, on the ground that the evidence would not warrant them in finding that Moore was charged with the duty of locating the plaintiff at his work, or with the duties of principal, and that Newton Mills must be considered to have been such agent. The result is that it has been established by the verdict that Mills did not act in the premises at all, and the court decided as a matter of law that Moore had no authority to represent the defendant in relation thereto. There is no ground for contending that any other officer or agent of the defendant assumed any authority or direction in the premises. There was, therefore, a total failure to bring home to the defendant notice or the knowledge of any duty it was bound to exercise as to the plaintiff, and it was therefore called on to exercise no protection or means on its part to guard him from injury at the place in question. It was necessary that there should have been some business relation or privity between the plaintiff and defendant in order to raise the duty which it is charged that the defendant neglected.

The gist of the action is the alleged negligence of the defendant; that is to say, that there was the absence of that degree of care required by the particular circumstances of the case. Cooley, Torts, 630; *Railroad Co. v. Jones*, 95 U. S. 441; *Vaughan v. Taff Vale R. Co.* 5 Hurl. & N. 679. "To bring the case within the category of actionable negligence, some wrongful act must be shown, or a breach of some positive duty. . . . It is not enough to show that the defendant has been guilty of negligence without showing in what respect he was negligent and how he became bound to use due care to prevent injury to others." *Gautret v. Egerton*, L. R. 2 C. P. 375; *Cahill v. Layton*, 57 Wis. 614. That the duty of the defendant in such a case as this is relative, and not absolute, is well illustrated in *Griswold v. C. & N. W. R. Co.* 64 Wis. 657; *Gillis v. Penn. R. Co.* 59 Pa. St. 143; *Jenkins v. C., M. & St. P. R. Co.* 41 Wis. 112; *Cole v. McKey*, 66 Wis. 510. For want of some proper or authorized direction to the plaintiff, express or implied, to work at the alleged dangerous place where he received his injury, raising the duty on the part of the defendant alleged to have been neglected, we think that the recovery in this case cannot stand, and that the case in this respect is, in principle, quite like the cases cited.

The judgment of the circuit court seems to have been rested on the ground that it was found by the jury that the place where the plaintiff got injured was the place where the work he was doing had previously ordinarily been performed, to the knowledge of the defendant's agent, Mills, and was the place provided by the defendant for the performance of the work plaintiff was engaged in, and was not a reasonably safe place for that purpose, and that the proximate cause of the plaintiff's injury was a want of ordinary care on the part of the defendant in not providing him a reasonably safe place for him to be while doing his work. The last finding is, we think, clearly inconsistent

with the first and fourth findings, to the effect that when injured he was not engaged in the regular course of his duties at the place where directed by defendant's servants charged with the duty of designating the proper place for the performance of such duties, and that the place where he was injured was the place provided by defendant for the performance of the work he was engaged in. The first and fourth findings are also inconsistent with each other. Besides, as we have seen, all evidence to sustain findings consistent with the first that would warrant a judgment for the plaintiff was, in effect, withdrawn from the consideration of the jury.

It appears that the plaintiff was inexperienced in the particular work he was engaged in, and had but an imperfect knowledge of the surroundings and its danger. Even if he knew that the place in question was where the work had ordinarily been performed and had been provided by the defendant for that purpose, which was not shown, he had no right, of his own mere motion, without any previous direction, express or implied, to assume to work therein for the defendant; for, although its employee, as to the particular work in hand he took the risk on himself in thus acting without the knowledge or authority of the defendant, express or implied. We consider the verdict so inconsistent and uncertain, and in important respects not warranted by the evidence as left to the jury by the court, that it cannot sustain the judgment.

There is a conflict in the testimony between Mills and Moore, the foreman, as to the authority of the latter to have spoken and acted for the defendant on this occasion. Upon this question there is no finding. Moore had acted as the foreman of the defendant, it would seem, for a considerable time, and was apparently exercising, in the absence of Mills, control of the men and the work. The situation and the circumstances, all considered in connec-

tion with the evidence, tend to show that Moore had authority to direct, in the absence of Mills, where the plaintiff should work, and that that question might properly have been submitted to the jury. The extent and nature of Moore's authority is not to be judged wholly by what either he or Mills testified in respect to it. The course of business, the attendant facts and circumstances, are also to be considered, and are quite as decisive as the opinions of these witnesses. Besides, we think it was the duty of the company to have some one in attendance on so considerable a force of men engaged in a business necessarily of a somewhat dangerous character, to see that they had reasonably safe places in which to do their work. We do not think that the defendant should be permitted to abdicate its proper functions on such occasions, and permit its superintendent to go away and let the business, as he expressed it, " run without anybody in control of it," and then disclaim all liability in the premises. If Moore was foreman, and directed the plaintiff where to work, and was in fact apparently in charge of the men and work, and the plaintiff obeyed him, it may be that, as against the defendant, taking the benefit of his acts in that capacity in carrying on its work, his apparent authority should be held to be the real one, and the defendant be bound by his acts. But, as the question is not fairly presented by the record, we reserve it for further consideration after another trial, if occasion shall require.

Without considering other questions argued, we think, for the reasons stated, that the verdict should have been set aside and a new trial granted, and that for want of a sufficient and consistent finding on the question of defendant's negligence the judgment cannot be sustained.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.