### BELTON OIL COMPANY v. DAVE DUNCAN.

Decided April 9, 1910.

**1.—Master and Servant—Volunteer—Pleading.**

One employed about an oil mill to carry away on a truck cotton meal cakes from the machine in which they were pressed was not a mere volunteer, and was entitled to the care due from a master to a servant while himself operating the machine, when it had been customary, with the knowledge and acquiescence of the master, for him and the servant operating the machine to exchange work, he being familiar with its operation. Pleading showing such facts held not subject to general demurrer as showing plaintiff to be a mere volunteer.

**2.—Master and Servant—Acting Beyond Scope of Employment—Charge.**

Where plaintiff was injured in doing, by exchange of duties with another servant, an act beyond the scope of his employment, claiming acquiescence of the master in his habit of so doing, it was error to refuse a requested charge that defendant was not liable if its rules forbade such exchange and it was made without consent of the foreman in charge who had used ordinary care to prevent its being done, there being pleading and evidence to sustain such defense.

**3.—Master and Servant—Negligence—Safe Machinery—Charge.**

A charge that it was the duty of the master to use ordinary care to furnish his servant with safe machinery and appliances to do his work, did not present reversible error, though machinery reasonably safe would be a more accurate expression.

Appeal from the District Court of Bell County. Tried below before Hon. J. H. Arnold.

*Tyler & Tyler* and *John B. Durrett,* for appellant.—The petition shows plaintiff to have been a volunteer. St. Louis Southwestern Ry. Co. of Texas v. Spivey, 97 Texas, 143; Louisville & N. Ry. Co. v. Pendleton's Adm'r., 104 S. W., 383; Duvall v. Armour Packing Co., 95 S. W., 978.

There is no doubt that if an employe voluntarily leaves the work for which he is engaged by his employer, and engages in other work for employer, and while at the latter work is injured, he can not hold the employer liable. Schaub v. Hannibal & St. J. Ry. Co., 106 Mo.,

74; 20 Am. & Eng. Ency., 131; Allen v. Hixson, 111 Ga., 460, 36 S. E., 810; Atlanta & W. P. Ry. Co. v. West, 121 Ga., 641, 49 S. E., 711, 67 L. R. A., 701, 104 Am. St., 179; Leistritz v. American Zyl. Co., 154 Mass., 382, 28 N. E., 294; Baltimore & O. Ry. Co. v. Doty, 133 Fed., 866, 67 C. C. A., 38; Monehan v. Covington St. R. Co., 117 Ky., 771; Illinois Cent. Ry. Co. v. Broughton, 78 S. W., 876; Louisville & N. R. Co. v. Hocker, 111 Ky., 707; Hatfield v. Adams, 96 S. W., 583.

RICE, ASSOCIATE JUSTICE.—This suit was brought by appellee for the recovery of damages for personal injuries received by him while in the employ of appellant. He alleged that the appellant owned and operated an oil mill in Belton, and had in its employ a large number of men, whose duty it was to perform all the labor and work necessary in the operation of said mill; that on the 12th of October, 1908, he was employed by appellant as a laborer in said mill, continuing his services until November 12, 1908, the date of his injury; that during the time of his employment he was engaged in working in the press-room as cake runner or trucker, the duties of which required him to work about a machine called a former puller, used for the purpose of making (cotton-seed) cake; that Theodore Hogan, one of his co-employes, was ordinarily employed as former puller, and that there were several other men, co-employes, engaged in various phases of the work in said room around said machine; that it was usual and customary for said co-employes of plaintiff and plaintiff to temporarily exchange the work they were doing with each other, and to relieve each other temporarily in the discharge of the duties ordinarily imposed upon them, which custom of said employes was well known to defendant and permitted and acquiesced in by defendant; that plaintiff was familiar with the duties of a former puller, and also with the operation of said machine, which he had theretofore operated successfully; that on the 12th of November, 1908, at the request of said Hogan, appellee temporarily relieved him, and was operating said machine in his stead in accordance with the usual custom heretofore set out; that in so performing such duties, among other things, it was his duty to assist in removing the cakes after they were formed from the former to a pan. It was also a part of his duty to place the cloth on the tray of the former, and to cause the same to be filled with meal, and to fold the cloth over the meal, and then to pull a lever and cause the former to move upward against a stationary piece of iron which was then and there a part of said machinery for making cakes, and thereby pressed the cake, and then to again press the lever and lower that part of the former with the cake, so that the same might be removed from the former to a pan in the hands of another employe; that on account of the defective and worn-out condition of the cloths furnished by defendant to its employes for the purpose of holding the meal to press the cake, it became and was necessary for appellee to place his hand in the tray of the former and in the lower part thereof, and beneath the stationary iron above the tray, for the purpose of assisting in moving the cake therefrom to the pan; that in performing said duties in a careful and prudent manner, and while

he had his left hand on said cake, as above described, for the purpose of assisting in moving the same into a pan and off of the tray of the former, the said tray of the former suddenly, without warning to appellee, moved upward, and his left hand was thereby suddenly and violently caught between the said tray of the former and the said piece of stationary iron above the same, thereby mangling, crushing and wounding his entire left hand, as well as injuring his arm, shoulder and back, which injuries were permanent and the direct and proximate result of the negligence of the defendant. It being further alleged that the defendant negligently failed to furnish a safe place, and safe tools, appliances, cloths and machinery with which to perform said work, and that, if said machinery had been in proper order, the tray of the former would not have moved up or down until the said lever was pressed or raised, and that if said machinery had been in proper order he could have performed the service he had undertaken with safety, and that appellant had knowledge of the defective and dangerous condition of said machinery and appliances, and that the same was an unsafe place for its employes to work, or by the exercise of ordinary care could have known same.

To this pleading appellant addressed a general demurrer, and answered by general denial, assumed risk, plea of contributory negligence, and specially, that plaintiff was not employed by defendant to operate the machine called a former, in the operation of which he was injured, but was engaged in other work about the mill, in the execution of which there was no hazard, and that plaintiff, without the permission or knowledge of the defendant, voluntarily undertook to operate said machine, and by reason of his own carelessness, negligence and unskillfulness, received the injuries of which he complains.

The court overruled the general demurrer, and upon trial before a jury, verdict was rendered in favor of the plaintiff for $5,000, and judgment entered accordingly thereon, from which this appeal is prosecuted.

Notwithstanding the fact that an able and elaborate brief has been filed for appellant, none is found in the record on behalf of appellee. The first assignment questions the sufficiency of the petition, and asserts that the court erred in overruling appellant's general demurrer thereto. While the authorities cited by appellant unquestionably support the view that the master owes no duty to a volunteer except ordinary care after discovery of his peril, yet if appellee, under the allegations of the petition, is not a volunteer, then we are inclined to believe that the cases cited are dissimilar to the one at bar, and should not be regarded as having controlling effect in the determination of the question presented. While the petition shows that appellee was directly employed as a cake runner or trucker, still it is alleged that he was familiar with the duties of a former puller, and that he and his co-employes about the press-room frequently exchanged work with each other, which practice was known to and acquiesced in by appellant. These allegations are, in our judgment, sufficient to establish, as between appellant and appellee, the relation of master and servant by implication, and are for this reason sufficient. Labatt on Master and Servant, in volume 2, section 633, after discussing the

liability of masters to volunteers, says: "Cases determined upon principles identical with, or closely analogous to, those discussed in the preceding sections, are those in which the injury was received by a person who, at the time when the accident occurred, was already in the employ of the defendant, but who is alleged to have gone outside the proper scope of his employment, without being directed to do so either by the master of by an agent who was authorized to transfer him to the new sphere of duty. The rule applicable to such circumstances has been formulated as follows: 'If an employe quits the work assigned to him by his employer, and voluntarily undertakes to do work about which he has no duties to perform by virtue of the contractual relation existing between him and his employer, then, while such condition exists, the duty growing out of that relation of using care for his safety does not rest upon the employer.' In other words, a servant who, voluntarily and without directions from the master, and without his *acquiescence,* goes into hazardous work which is not embraced in the contract of hiring, may be regarded as putting himself beyond the protection of his master's implied undertaking."

In the following section he says: "The scope of a servant's duties in relation to the rule illustrated by the case cited in the last section is defined *by what he was employed to perform, and by what, with the knowledge and approval of his employer, he actually did perform,* rather than *by the mere verbal designation of his position.* The question whether the injured person was acting in the course of his employment is for the jury where the evidence is conflicting, or where a difference of opinion may reasonably be entertained with regard to the proper inference to be drawn from the testimony. Otherwise that question is decided as one of law by the court. Any evidence which has a bearing upon the actual scope of the servant's duties is admissible. One of the most important circumstances to be considered *is whether the servant had ever, upon any other occasion, engaged in work similar to that which he was doing when the injury was received. If the conditions under which such work had previously been performed were such as to warrant the inference that the enlargement of his regular functions had been acquiesced in to the extent shown, a court will, in most instances, decline to say, as a matter of law, that the servant was injured outside the proper scope of his employment. The acquiescence upon which the right of action in this point of view depends will, of course, be inferred only where it appears that the fact of the servant's having discharged the additional duties was known to the master or his agent ad hanc vicem."*

This doctrine seems to have been sustained in Mullin v. Northern Mill Co., 53 Minn., 29, 55 N. W., 1115. See also Goff v. Chippewa River R. Co., 86 Wis., 237, 56 N. W., 465. See also Wagen v. Minneapolis & St. Louis R. Co., 80 Minn., 92, 82 N. W., 1107. So in the present case, notwithstanding the allegations show that it was the ordinary duty of appellee to perform other services than those of former puller, *still it is alleged that it was the habit and custom of employes in the mill to exchange work with each other, and that such custom was known to and acquiesced in by the appellant.* Such being

the allegation, it seems to us the petition was sufficient in this respect, and the demurrer was properly overruled.

It is urged by the fourteenth assignment that the court erred in refusing to give the following special charge at the instance of appellant: "If you believe from the evidence that, before plaintiff's injury, there was a custom in defendant's mill for men to exchange work, yet, should you further believe that defendant's foreman did not approve of this custom, and did not consent thereto, but used ordinary care to prevent the exchange of positions of said men, then you will find for defendant in this case." By its proposition under this assignment it is contended that if the theory of the trial court was correct, that such custom would create the relation of master and servant; still the issue submitted in the requested charge was vital as touching defendant's permission and acquiescence therein, because, notwithstanding the custom prevailed and, under the law, entitled plaintiff to recover on account of defendant's acquiescence, as held by the trial court, still the fact that the defendant did not approve of the same and used ordinary care to prevent the custom would negative defendant's permission and acquiescence and defeat such recovery; and that the question as to whether the defendant did use such ordinary care to prevent the custom of exchanging work was raised by the pleadings and evidence, for which reason, it is insisted, the trial court erred in refusing to give said special charge. There was evidence to the effect that appellant had promulgated a rule forbidding employes to exchange or swap work with each other. There was also evidence showing that appellee had been directly warned in person not to exchange work with the former puller, and that positive instructions had been given to him by the foreman of the mill in this respect. This defense was fully set up in appellant's answer, and the issue being raised as to whether or not appellant, notwithstanding the alleged custom, had forbidden appellee and his co-employes from exchanging work, we think it was the duty of the court to affirmatively present this issue in his charge to the jury; and especially so, since appellant requested the same in a proper charge. It is held in Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635, as shown by the syllabus, that where the charge given correctly states the law on an issue, but does not apply it to the evidence, a party has the right to prepare and have given a charge requiring the jury to find whether the evidence establishes the existence of any specified group of facts, which, if true, would in law establish his plea, and instructing them, if they find such group of facts proven, to find in his favor. See also the following cases in support of this rule: Missouri, K. & T. Ry. Co. v. Rogers, 91 Texas, 58; San Antonio & A. P. Ry. Co. v. Kiersey, 98 Texas, 596; Harris v. Harwell, 71 S. W., 792; Gulf, C. & S. F. Ry. Co. v. Denson, 72 S. W., 70; Epperson v. International & G. N. R. R. Co., 125 S. W., 117. Believing that the pleadings and the evidence raised the issue as presented by the special charge, we think it was the duty of the court to have given the same. We therefore sustain this assignment.

The fifteenth assignment urges that the court erred in telling the jury that the law imposed upon the owners and operators of the

mill the duty of using ordinary care to provide a safe place and safe appliances and machinery for the conduct of the work in which the employes thereof were engaged, etc. Appellant insists that this is not a correct charge upon this subject, for the reason that the law does not impose the duty of using ordinary care to provide "safe appliances and machinery," as stated in said charge, but only requires ordinary care to provide reasonably safe appliances and machinery.

While we think, perhaps, it would have been better for the charge to have been phrased as appellant contends, nevertheless it was not affirmative error for the court to have given the charge complained of. An examination of the authorities in this State upon this subject seems to indicate that a charge such as given here is not error. Our Supreme Court, in Missouri Pac. Ry. v. Lyde, 57 Texas, 509, discussing the question, quotes approvingly from Pierce on Railroads, announcing the rule that the master's duty is to use reasonable care to provide and maintain a safe roadbed, etc. And in Texas & P. Ry. v. Huffman, 83 Texas, 288-90, the court says: "It is not the duty of the company to furnish safe machinery, but to use reasonable diligence in furnishing safe machinery for its employes." In Texas & N. O. Ry. Co. v. Bingle, 91 Texas, 288, Chief Justice Gaines says: "It is the duty of the master to exercise ordinary care to furnish him (the servant) a safe place in which to work, safe machinery and appliances." In Missouri Pac. Ry. Co. v. Crenshaw, 71 Texas, 340, will be found a charge where, in effect, the jury were instructed that it was the duty of the master to exercise ordinary care to furnish his servants with safe implements and appliances with which to work, and the charge was in all respects approved.

Again, in Texas M. R. Co. v. Whitmore, 58 Texas, 276, where the same question is considered, Mr. Justice Stayton says: "The duty of the master to furnish suitable and safe machinery and material stands upon no higher or other ground than does the duty of the master to employ competent and careful servants. In reference to the duty of a corporation to furnish suitable machinery, in the case of Hough v. Texas & P. Ry. Co., 100 U. S., 213, Justice Harlan delivering the opinion of the court, and adopting the language of the Supreme Court of Massachusetts in the case of Ford v. Fitchburg R. R. Co., 110 Mass., 241, said: 'The rule of law which exempted the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow servants, does not excuse the exercise of ordinary care in supplying and maintaining proper instrumentalities for the performance of the work required. One who enters the employment of another has a right to count on this duty, and is not required to assume the risks of the master's negligence in this respect. The fact that it is a duty which must always be discharged, when the employer is a corporation, by officers and agents, does not relieve the corporation from that obligation. The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow servants of those who are engaged in operating it. They are charged with the master's duty to his servant. They are employed in distinct and independent departments of service, and there

is no difficulty in distinguishing them, even when the same person renders service by turn in each . . . The corporation is equally chargeable, whether the negligence was in originally failing to provide or in afterwards failing to keep its machinery in safe condition.'

"Speaking upon the same subject in the case of Gillman v. Eastern R. R. Co., 13 Allen, 440, Gray, Justice, says: 'The master is bound to use ordinary care in providing suitable structures and engines and proper servants to carry on his business, and is liable to any of their fellow servants for his negligence in this respect.' " See also Currie v. Missouri, K. & T. Ry. Co., 101 Texas, 478.

We are aware that this duty is often defined in the language insisted upon by appellant, but a careful review of our own, as well as decisions from other jurisdictions, demonstrates that the duty imposed is as often expressed in the language used by the court in its charge. Yet, while this is true, we have been unable to find any case where the exact point under consideration has been passed on, and counsel for appellant fails to furnish us with any. We are inclined to think, from a review of our authorities, that the expression in the charge is regarded as equivalent to the language contended for by appellant, and that these expressions have been used interchangeably by the courts, and therefore overrule this assignment. But in the event of another trial we would suggest, in order to save any question upon this subject, that it might be best to conform to the formula contended for by appellant in charging upon this subject. See Passmore on Instructions to Juries in Civil Cases, 374, secs. 600 et seq. See also volume 26 Ency. Law and Proc., pp. 1097 et seq.; Galveston, H. & S. A. Ry. Co. v. Gormley, 91 Texas, 393; Labatt on Master and Servant, volume 1, sections 22a and 26 et seq.

The other assignments have been duly considered, and are regarded as not well taken, and are therefore overruled.

For the error indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*