GALVESTON, H. & S. A. RY. CO. v. BREMER et al. (No. 6292.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 10, 1919. Rehearing Denied Jan. 7, 1920.)

1. MASTER AND SERVANT ⬤⟝284(3)—SCOPE OF EMPLOYMENT QUESTION FOR JURY.

Whether the injured employé was acting within the scope of his employment is a question for the jury, when the evidence is conflicting or when a difference of opinion may be reasonably entertained as to the proper inference to be drawn therefrom.

2. MASTER AND SERVANT ⬤⟝89(1)—SCOPE OF EMPLOYMENT NOT GOVERNED BY VERBAL DESIGNATION.

The scope of a servant's duties is determined by what he was employed to perform and what, with the knowledge and approval of his employer, he actually did perform, rather than by the mere verbal designation of his position.

3. MASTER AND SERVANT ⬤⟝284(3)—SCOPE OF EMPLOYMENT QUESTION FOR JURY.

In an action for the death of a foreman who climbed a ladder to superintend repairs of a flagpole on employer's shop preparatory to raising of flag purchased by employés as evidence of their loyalty to the government, the question of whether he acted within the scope of his employment *held* for jury.

4. MASTER AND SERVANT ⬤⟝267(1)—EVIDENCE COMPETENT TO SHOW SCOPE OF EMPLOYMENT.

In an action for the death of an employé superintending repairs of a flagpole on employer's shop where defense was that he was not acting within scope of employment, plaintiff's evidence that employer directed other employés to finish the work was admissible.

5. DEATH ⬤⟝99(4)—VERDICT OF $15,000 FOR DEATH OF HUSBAND AND FATHER NOT EXCESSIVE.

A verdict for $15,000 in favor of widow and $5,000 in favor of daughter for death of husband and father, 49 years old, who had been earning $125 a month, most of which was spent on the wife and daughter, *held* not excessive.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by Minnie L. Bremer and another against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Ogden and Clinton G. Brown, all of San Antonio, for appellant.

Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellees.

FLY, C. J. This is a suit for damages accruing from the death of William R. Bremer, the husband of Minnie Bremer and father of Annie Bremer, who instituted the action against appellant. The cause was tried by jury resulting in a verdict and judgment for the widow, Minnie Bremer, in the sum of $15,000, and in favor of the daughter, Annie Bremer, for $5,000.

The first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and thirty-fifth assignments of error assail the sufficiency of the evidence to sustain the verdict, which necessitates a review of the material facts established upon the trial.

William R. Bremer, on April 5, 1917, the "carpenter foreman" of appellant in San Antonio, Tex., sought to reach the top of a machine shop of appellant on a certain ladder, and one of the rounds of the ladder, which was stationary and fastened to the side of the machine shop, gave way and precipitated him to the ground, injuring him to such an extent as to cause his death. The evidence clearly showed that there was negligence in the manner in which the ladder was kept, and that such negligence was the direct and proximate cause of the death of William R. Bremer, an employé of appellant. None of the foregoing facts or deductions therefrom is denied or questioned by appellant; really the only material question raised being that deceased when fatally injured was not engaged in the prosecution of the master's work, but was engaged in an enterprise of his and other employés foreign to the service of appellant.

On the morning of April 5, 1917, as an evidence of loyalty to the American government, which was just entering into the world war with the central autocracies of Europe, it was determined by the vice principals and employés of appellant that there should be a flag raising on the machine shop, on which appellant had theretofore erected a flagpole. It seems that appellant did not possess a flag for the occasion, so the employés raised a subscription and bought a flag. It was ascertained that a rope had to be fastened to the pole so the flag could be hoisted. Under instruction or request, as it may be, of W. G. Furman, the foreman painter, acting for the assistant superintendent, Bremer put two of his men at work on the flagpole, and he ascended the stationary ladder on the machine shop, to overlook the work of his men, and when he reached the fourteenth round or slat

it broke loose, precipitating him to the ground and causing his death. The ladder had been furnished by appellant for the use of any employé who had any business on the roof of the machine shop. Bremer was in charge of the men who were on the roof under his orders, and who were working with the knowledge and consent of appellant on its time, and for which it paid, to repair a flagpole belonging to it in order that it might be used for patriotic purposes. Bremer was "on his job" and being paid for his services in fixing the flagpole when he fell. It had been determined to buy and hoist a flag, and a collection was taken up by permission of Connor, the assistant superintendent and master mechanic, and he told Furman to go ahead and have the flagpole fixed. The order was communicated to Bremer and he sought to obey it. It was his business to repair the pole. Furman was merely an intermediary. The pole was a permanent part of the machine shop, and had been on the house since it was built, and appellant company used it on legal holidays and other public occasions. Appellant did not place its assistant superintendent or general foreman upon the witness stand, who doubtless could have testified to the exact duties of Bremer as well as the precise orders, if any, under which he was acting when injured.

[1] As is often the case, so in this, the liability of the employer turns upon the response to the inquiry whether the injured employé was acting at the time his injuries were received within the scope of his employment. Had deceased turned aside from his line of duty to his employer in the furtherance of some object peculiar to his own affairs? This is a question of fact to be determined by a jury in view of all the circumstances surrounding the case when the evidence is conflicting, or when a difference of opinion may be reasonably entertained as to the proper inference to be drawn from the evidence. Railway v. Stephens (Sup.) 203 S. W. 41. After formulating the rule, "If an employé quits the work assigned to him by his employer, and voluntarily undertakes to do work about which he had no duties to perform by virtue of the contractual relation existing between him and his employer, then, while such condition exists, the duty growing out of that relation of using care for his safety does not rest upon the employer," Labatt, in his Master and Servant (section 1566), says:

"The scope of a servant's duties in relation to the rule illustrated by the cases cited in the last section is defined by what he was employed to perform and by what, with the knowledge and approval of his employer, he actually did perform, rather than by the mere verbal designation of his position."

[2] That rule is broad, logical, and reasonable, and it has been in terms cited and approved in Texas Railway v. Stephens, herein cited; Belton Oil Co. v. Duncan, 60 Tex. Civ. App. 257, 127 S. W. 884. The language of the rule approved by Labatt and the Texas courts is that used in the Pennsylvania case of Rummell v. Dilworth, 111 Pa. 343, 2 Atl. 355, as follows:

"The scope of his duties is to be defined * * * by what, with the knowledge and approval of his employer, he actually did perform, rather than by the mere verbal designation of his position."

[3] Under the facts of this case, appellant was shown to have actually known that the flag was to be raised and approved such act through its vice principals; it knew that to raise the flag it was essentially necessary that some one should be sent to the top of the machine shop where it had erected its flagpole; it knew that the stationary ladder fastened to the side of the shop would naturally and reasonably be used by any employé seeking to reach the flagpole; and it was charged with the knowledge that the flagpole needed repairing and that carpenters would naturally be used to repair it. It knew that for years employés had been at certain times in each year raising the flag on its pole, and it undoubtedly approved of such service on the part of employés. The work was being done under authority of the assistant superintendent, Connor. The ladder was usually used by employés in reaching the roof. The evidence was sufficient to go to the jury. The allegations of the petition were sufficient to form a basis for the evidence, and the eleventh, twelfth, thirteenth, fourteenth, and fifteenth assignments of error, which assail the sufficiency of the pleadings of appellees, are overruled.

The sixteenth, seventeenth, eighteenth, nineteenth, and twentieth assignments of error are overruled. The issue of whether the deceased was performing a duty of his employment, when he was injured, was properly presented through the assailed issue given to the jury. The objections urged to the issue are technical and academic, rather than practical and material.

[4] The twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, and thirty-third assignments of error assail the action of the court in allowing the witness Erler to testify to his acts after deceased was disabled and in not striking it from the evidence. The evidence was admissible as tending to show that Bremer was in the active discharge of a duty assigned to him by appellant, which was evident from the fact that Erler who had been working under Bremer was ordered to finish the job begun by Bremer. Appellant sought to show that the work of Bremer on the flagpole was

that of a volunteer and not in the line of his duty to appellant, and it was competent to show, as reflecting light on appellant's attitude toward Bremer, that appellant after the injury continued its order to the employés under the supervision of Bremer and who had chosen to finish the job begun by him.

[5] Under the facts the verdict for $15,000 in favor of the widow and $5,000 in favor of the daughter was not excessive. The deceased husband and father was 49 years of age and was earning $125 a month. It was shown that he was economical and spent most of his wages on his wife and child. The verdict is not excessive.

The judgment is affirmed.