The other contentions of appellant in his motion for rehearing have already been discussed by us, and we deem them without merit.

The motion for rehearing will be overruled.

---

**DAUGHERTY v. COOLEY et al.  (No. 1275.)**

(Court of Civil Appeals of Texas.  El Paso. Dec. 21, 1921.)

**1. Injunction ⪪135—Denial of temporary injunction held within trial court's discretion.**

The denial of a temporary injunction to restrain the execution of a sheriff's deed, where no attack was made on the judgment, but it was contended the price was inadequate, and the answers under oath showed the property sold for its full value, which was insufficient to pay the debt, was within the discretion of the trial court.

**2. Husband and wife ⪪272(3)—Incompetent wife has no interest subject to administration in community property during husband's lifetime.**

Since a husband has full control over the community estate during his lifetime, a wife, who is mentally incompetent, has no interest in such property, while her husband is living, which is subject to administration in the probate court.

Appeal from District Court, El Paso County;  P. R. Price, Judge.

Action by J. S. Daugherty, as receiver of the estate of Adelle Miller, a person of unsound mind, against Winchester Cooley and others, to restrain the execution of a sheriff's deed.  From an order denying a temporary injunction, plaintiff appeals.  Affirmed.

L. A. Dale and S. Lattner, both of El Paso, for appellant.

J. U. Sweeney and W. M. Coldwell, both of El Paso, for appellees.

HARPER; C. J.  This action was instituted by J. S. Daugherty, as receiver of the estate of Adelle Miller (a person of unsound mind), against Winchester Cooley, Frank G. Alderete, and Seth B. Orndorff, sheriff, for writ of injunction, to restrain said sheriff from executing deed to Alderete to lands, therein described, theretofore levied on under order of sale, issued out of the district court of El Paso county, pursuant to the provisions of a judgment in favor of said Cooley in cause No. 9062, styled Miller v. Guaranty Trust & Banking Company, in which suit Cooley intervened, and obtained judgment for his debt, with foreclosure of lien.  An ap-

peal was perfected.  The facts are fully stated in 207 S. W. 642.  The case was passed upon by the Supreme Court (228 S. W. 1085), and the judgment of the trial court affirmed. We refer to these opinions for a full statement of the issues involved.

Appellant alleged that said Adelle Miller, as the wife of Mark Miller, had an undivided community interest in the property, and that it was sold for an inadequate price.  These allegations were denied under oath, and the court denied the temporary injunction, from which this appeal.

[1] The case was heard upon the petition and answer.  There is no attack upon the judgment, nor the process; the allegation that the price bid is inadequate having been specifically denied under oath.  The court did not err in refusing the writ, being within his sound discretion.  Sutherland v. City of Winnsboro, 225 S. W. 63.

It conclusively appears from the answers of the defendants under oath that the property sold for its full value; therefore is not of sufficient value to settle the debt, the judgment and interest against Mark Miller, the husband; so that in no event could there be any residue for the county court to distribute.

[2] Again, the appellant does not assert any right for his ward as her separate estate, so it would seem that the husband has the full control over it, and the judgment in this case against him binds her for all purposes, and she has no interest subject to administration in the probate court during his lifetime.  Carter v. Conner, 60 Tex. 52. Upon the face of the record before us, the court properly refused to issue the temporary writ.

Affirmed.

---

**GULF PRODUCTION CO. v. GIBSON. (No. 9688.)**

(Court of Civil Appeals of Texas.  Fort Worth.,  Nov. 12, 1921.)

**1. Trial ⪪248—Abstract instruction properly refused.**

In action for injury to plaintiff's land from defendant's agent's having driven a large tractor and loaded trucks on it, where defendant pleaded plaintiff's contributory negligence in not expending a small amount of labor and money in avoiding or lessening the loss, a requested instruction that "the wrongdoer is responsible for only such consequences of his act as are the natural and probable consequences thereof" was properly refused as abstract.

**2. Trespass ⪪50—Damages for loss of use of land recoverable.**

If defendant's going on plaintiff's cultivated land with a tractor and trucks was wrongful,

and did damage to the land so that plaintiff could not cultivate it the next year, or could not raise the usual crops thereon, defendant would be liable for the loss of the use of the land for that year, and plaintiff would not be limited to recovering the amount of money necessary to repair the injury.

**3. Trial ⚙══261—Submission of incorrect charge on damages does not require correct charge.**

The submission of an incorrect charge on measure of damages does not require the court to give a correct charge thereon.

**4. Appeal and error ⚙══758(6)—Error in failure to charge must be assigned on failure to give correct charge.**

For one who has tendered an incorrect charge to be in a position to urge error in the appellate court. he must have an assignment to the failure of the court to give the requested charge, as well as an assignment to the failure of the court to give a correct charge.

**5. Highways ⚙══82—Right of deviation exists only when obstruction is impassable, and arises from temporary causes, and no other road available.**

For one to have the right of deviation from the highway to adjoining land, the obstruction must be such as would prevent travelers from going through, over, or around it, and must arise from sudden and temporary causes, and it must be shown that no other passway was convenient or accessible.

Appeal from Eastland County Court; J. H. Jones, Judge.

Action by H. L. Gibson against the Gulf Production Company. From judgment for plaintiff, defendant appeals. Affirmed.

R. E. L. Batts and Frederick E. Greer, both of Wichita Falls, for appellant.

Sayles & Sayles, of Abilene, for appellee.

BUCK, J. H. L. Gibson sued the Gulf Production Company for damages, alleged to have occurred as a result of defendant's agent having torn down the fences on plaintiff's farm and driven a large tractor and several loaded trucks over plaintiff's cultivated lands. Plaintiff alleged the damages consisted: (1) Of injury to his land, packing it down and cutting it up, and thereby causing said farm to become badly washed by subsequent rains; (2) the value of the wire and fence posts and labor necessarily used in the repair of the fence; (3) the rendering of 20 acres unfit for cultivation during the crop year of 1920, and the loss of the usual crops thereon.

Defendant, after a general demurrer, certain special exceptions, and a general denial, specially pleaded contributory negligence on the part of the plaintiff in not expending a small amount of labor and money to avoid or lessen the loss.

The court, after setting out the grounds for recovery alleged in plaintiff's petition, and calling attention to defendant's plea of contributory negligence, and instructing the jury with reference thereto, informed the jury that they would have the petition and answer with them during their deliberations, and charged them that the burden was upon plaintiff to prove by a preponderance of the evidence the material allegations on which he relied for recovery, and, should they find that these material allegations were true, they would further find whether he contributed to his damages by his own negligence, if any, and, if so, to what extent, and, keeping all the foregoing in mind, the jury would determine whether plaintiff should recover, and, if so, to what extent. The jury returned a verdict for $150, and the defendant has appealed.

[1] The first assignment is directed to the refusal of the court to give the following special instruction tendered by the defendant:

"You are instructed that the wrongdoer is responsible for only such consequences of his act as are the natural and probable results thereof."

It is not error to refuse a charge containing an abstract principle of law without informing the jury of its application to the issues. Hayward Lumber Co. v. Cox, 104 S. W. 403, writ denied. Instructions should be framed with reference to the pleading and the testimony, and not expressed in abstract and general terms. 46 Cent. Dig. p. 1590, § 582; Belton Oil Co. v. Duncan, 60 Tex. Civ. App. 257, 127 S. W. 884; Zarate v. Villareal, 155 S. W. 328, writ of error denied. Moreover, the evidence sustains the recovery found, we think, on the ground that the injury done was the natural and probable consequences of defendant's acts in going upon the land. The charge tendered admits that the going upon the land was wrongful.

[2-4] We do not think the charge tendered by the defendant, and to the refusal of the giving of which the second assignments is directed, includes all of the grounds of recovery which plaintiff's petition contained and the evidence supports. If the going upon the land was wrongful, and the damage was done to the land so that the plaintiff could not cultivate it the next year, or could not raise the usual crops thereon, we think that the defendant would be liable for the loss of the use of the land for that year. The charge tendered limited plaintiff's recovery to the amount of money necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury, with interest thereon to the time of the trial. Plaintiff testified that on four acres of the

⚙══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

land traveled over by defendant's agents he did not raise any crop, and that on some two acres of the land he raised only a small part ·of the crop raised on other land of like character and adjacent thereto. We think he was ·entitled to recover this loss. Nor do we think that the submission of this charge required the trial court to give a correct charge upon the measure of damages involved in this suit. No assignment is directed to the failure of the court to instruct the jury as to what measure of damages would apply. In Olds Motor Works v. Churchill, 175 S. W. 785, we held that, in order for one who has tendered an incorrect charge to be in a position to urge error in the appellate court, he must have an assignment to the failure of the court to give the requested charge, as well as an assignment to the failure of the court to give a correct charge, and we believe the rule laid down in that case is the proper one.

[5] The evidence of defendant's witnesses showed that they were hauling derrick material between Eastland and Breckenridge; that on this occasion they had a tractor pulling two trucks or trailers; that these trucks were capable of carrying 12,000 pounds, but on this occasion had only about 10,000 pounds; that when they reached a point on the road in front of plaintiff's land they discovered a bad place in the road, and the driver concluded that it was not safe to go through such bad place, and lowered the wires on the fence and drove through onto plaintiff's land and around the bad hole. Other haulers, driving teams, came up while the defendant's agents were in the field, but these other persons doubled up their teams and drove one wagon though the bad place. They then returned to the wagon left behind and drove it through the field. It does not appear that any one else drove over plaintiff's land. The tractor had a tread of some 12 inches, and the plaintiff's witnesses testified that it made deep holes in the loose soil, some of which were so deep that they could not be plowed over. Defendant did not plead that it was forced to go on the land by reason of the highway being impassable, but it submitted a charge to the effect that, if the road in front of plaintiff's land was impassable, then the jury should render a verdict for the defendant. It relies on such cases as Hedgepeth v. Robertson, 18 Tex. 858; Campbell v. Race, 7 Cush. (Mass.) 408, 54 Am. Dec. 728; Morey v. Fitzgerald, 56 Vt. 487, 48 Am. Rep. 811, 13 R. C. L. 221; Shriver v. Marion County, 66 W. Va. 685, 66 S. E. 1062, 26 L. R. A. (N. S.) 377; Kent v. Judkins, 53 Me. 160, 87 Am. Dec. 544—as supporting its right to pass over the land in case the road had become impassable. In 13 R. C. L. p. 269, § 221, under the subject of "Highways," it is said:

"It is generally held that, if a public highway be out of repair and impassable, a traveler may lawfully go over the adjoining land, without being guilty of trespass, though the right to do so has been doubted, and there is some authority holding that it does not exist. The rule is especially applicable where the landowner over whose land the highway passes has himself obstructed the way. This right of deviation is based upon the maxim that private mischief shall be endured rather than public inconvenience, and on the ground that it is for the public good that there should be at all times free passage along the highways for all subjects of the state. Its exercise does not amount to a taking of private property for public use, without compensation, for, even if it can be regarded as an appropriation of the abutting owner's property, it is one of the legal incidents or consequences which attaches to a highway through private property, and hence it must be assumed that it was taken into consideration and proper allowance made therefor, when the land was originally appropriated for the highway, and that the damages were then estimated and fixed, for the private injury which might thereby be ·occasioned. The right, having its origin in necessity, is limited by the necessity which creates it, and is not to be exercised from convenience merely, nor when, by the exercise of due care, after notice of obstructions, other ways may be selected and the obstructions avoided. To warrant its exercise the obstruction must be of such a character as to render the road founderous and impracticable, and must also arise from sudden and temporary causes. What constitutes such inevitable necessity or unavoidable accident as will justify a deviation must depend upon the various circumstances attending each particular case, such as the nature of the obstruction, the length of time during which it has existed, the vicinity or distance of other public ways, and the exigencies of the traveler, and is generally a question for the jury. The nature and character of the obstruction, rather than the time of its duration, will govern in determining whether or not it is temporary in character. Snow and ice and washouts have been held insufficient to justify a deviation. If the obstruction is such that to remove it would materially delay the traveler in his journey, and impose upon him any considerable labor, he is' under no obligation to remove it in order to avoid a deviation. Nor is he obliged to take measures to have the road repaired or to provide himself with another way. In passing over the adjoining land, he must do as little damage as possible, but, if it is inclosed, may make a breach in the fence sufficient for his passage."

The only Texas case that we have been cited to, and the only one we have found touching this rule, is Hedgepeth v. Roberston, supra. That was a case where a slave. driving his master's wagon, came to a bad place in the road where his team of oxen became bogged. He tried to pass through the mudhole, but his team could not make it. He then pulled down the fence and took his oxen loose and fastened them inside the field. The next morning the overseer of the plantation came up and threatened to whip or kill the

negro. The negro ran off, and the overseer pursued him with dogs, but came back later and said he had not seen him. The negro never returned. The suit was for damages for the loss of the negro and for injuries to the cotton which had been unloaded in the mud. The court, speaking through Judge Wheeler, said:

"The pulling down of the fence, under the circumstances, was a necessary and justifiable act, and no trespass. 2 Kent., Com. 338. But, if it did amount to a trespass, it was not an unauthorized and wanton, willful or malicious trespass; it was done by the slave necessarily, in the performance of his master's service, in the pursuance and execution of the authority and duty confided to his slave; and if there was any injury occasioned by the act, the master was responsible for it."

From the language used in this Texas case, it might be inferred that a person going into the inclosure of another to avoid an impassable condition of the highway might be liable for any damage he caused, though he would not necessarily be guilty of a wanton trespass. But in order for one to have the right of deviation, under this rule, the obstruction must be such as would prevent travelers from going through, over, or around it, and must arise from sudden and temporary causes. Also it must be shown that no other passway was convenient or accessible. In the instant case there was no evidence tending to show that defendant's servants could not have gone another road, or that the bad hole in the road had not been there for some time, or indeed, that it was not passable. The fact that one of the vehicles went through it tends to show that it was passable. Hence we conclude that the charge as tendered should not have been given.

All assignments are overruled, and the judgment is affirmed.